UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Carrie Lynn Luft,
        Plaintiff,
On behalf of herself, individually and the
Class of all others similarly situated,

v.

Civil Action Number:
**2:11-cv-703-FtM-29SPC**

Mark H. Muller, Esq.,
Mark H. Muller, P.A.,
Michael D'Onofrio, Esq.,
Danielle Spradley, Esq.,
Ben-Ezra & Katz, P.A.,
MORTGAGE ELECTRONIC
        REGISTRATION SYSTEMS, INC.,
AMERICAN HOME MORTGAGE
        SERVICING, INC.,
CITIGROUP GLOBAL MARKETS, INC.
CITIGROUP HOME MORTGAGE
        TRUST 2007-AHL3
CITIGROUP GLOBAL MARKETS
        REALTY CORP.,
CITI PROPERTY HOLDINGS, INC.,
        formerly known as
LIQUIDATION PROPERTIES, INC.,
ACCREDITED HOME LENDERS
HOLDING CO., as Successor in interest to
ACCREDITED HOME LENDERS, INC.,
LONE STAR FUNDS, INC.,
And John & Jane Does 1-10.
        Defendants.

_____/



2013 MAY 14 PM 2:18
FILED
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

**SUGGESTION OF
CLASS ACTION**
Fed.R.Civ.P. **Rule 23**

*TRIAL-BY-JURY
DEMANDED
Seventh Amendment*

## SECOND AMENDED COMPLAINT

Comes now the undersigned Plaintiff Carrie Lynn Luft *in propria persona* before this Court, on behalf of herself as an individual and class representative, with this Second Amended Complaint in the above entitled-and-numbered cause. Plaintiff's tender of this Second Amendment of her pleadings incorporates and does not constitute an abandonment of the allegations, claims, and contentions raised in her First Amended Complaint.

1. Plaintiff brings these her claims for damages, declaratory relief, and injunction to establish her rights, reverse, and compensate her for damages that she has suffered by reason of the attempts of the defendants, their associates, and co-conspirators wrongfully to foreclose upon, seize and eject her from her home (in that certain case Charlotte Co. Circuit Court Case #06-1334-CA; Florida 2nd DCA #2D10-3807). Carrie Lynn Luft submits that her history is typical of tens and possibly hundreds of thousands of homeowners in the state of Florida, victimized by securitization of home mortgage notes and all its attendant perversion of the legal system.

2. The activities of the defendants were, and are, fraudulent, oppressive, and corrupt subversions of the constitutional regimes of the United States of America, and in state of Florida, as manifested especially in and through the Circuit Courts where most residential foreclosure cases are tried.

3. Citigroup Global Markets Realty (hereinafter CGMRC) and its allied "shell game" defendants in this case should have been estopped by their own allegations and admissions regarding the disputed nature and quality Carrie Lynn Luft's loan from proceeding with foreclosure, since April 2008 and still are judicially estopped physically possessing on or retaining title to Plaintiff's property in Port Charlotte. Further, these defendants are here and now, in

this present lawsuit, judicially estopped from denying the allegations of Plaintiff's Complaint which render the Florida Circuit Court Judgment for Foreclosure Null and Void because of CGMRC's allegations of fact and legal contentions in Case Number 1:08-cv-03545-RJH filed in April 2008 in the United States District Court for the Southern District of New York[1].

---

1. This 2008 complaint filed in the U.S.D.C., S.D.N.Y., illustrates the astounding, truly Byzantine, subtly but constantly shifting roles, identities, and complexities of the relationships between the parties to this case: *Citigroup Global Markets Realty Corp. v. Accredited Home Lenders, Inc.*, Case No. 1:08-cv-03545-RJH (U.S. District Court, SDNY, file 2008) provides the foundational proof for Plaintiff Carrie Lynn Luft's claim, for Wrongful Foreclosure arising from and due to Fraud Concerning Holder-in-Due-Course status (First Cause of Action) and the closely related Second Cause of Action for Judicial Estoppel.

In the First Amended Complaint (filed July 30, 2008), CGMRC sued Accredited Home Lenders for, among other things, selling or otherwise transferring Carrie Lynn Luft's AHL Loan to CGMRC (see below) as part of a pool for securitization. The grounds for the lawsuit were that "the Luft loan" constituted a breach of warranty and misrepresentation on the part of AHL to Citigroup in a sale ("Mortgage Loan Purchase and Interim Servicing Agreement" which took place on June 1, 2005, almost 8 months before Carrie Lynn Luft's loan closed on February 23, 2006. See Exhibit A: First Amended Complaint, Document 15, Filed 07/30/2008.

See also the closely related "opinion of counsel" letter of Citigroup Global Counsel Thacher, Proffitt & Wood, L.L.P., found on-line at at: **http://www.sec.gov/Archives/edgar/data/1257102/00008823770500 2520/d376523_ex5-1.htm** , attached to this Complaint as Exhibit B.

Such letters are part of the SEC securities "registration" process prior to an initial public offering of securities and this letter confirms, among other things, that Carrie Lynn Luft's loan was securitized, despite Mark H. Muller's recent denials in papers filed in the present case (May 8 & May 29, 2010, Exhibits D & E).

And finally, to prove, by admission, that at least three of the Defendant entities are closely related to each other, please see also Exhibit C: the "Corrected Rule 7.1 Statement" filed on April 17, 2008, in the same Civil Action Number: 08-Civ-3545 (PKC), wherein Alex Lippman of Jenner & Block, LLP, admits that Accredited Home Lenders, Inc., and the last named Corporate Finance Defendant

4. Most importantly, plaintiff is seeking an order from this Court finding that the judgment of foreclosure obtained against her, and most if not all of the foreclosures rendered under similar circumstances in the state of Florida for the past six-to-eight years, were obtained in violation of Plaintiff's own constitutional rights and those of the members of the class she represents.

5. Plaintiff submits and will ask this Court to declare and adjudge that the foreclosures covered by this class action were, like her own, obtained by

---

named in this case, namely Lone Star Funds, Inc., (Lone Star Fund V, LSF5 Accredited Holdings, LLC, LSF5 Accredited Investments, LLC, and LSF V International Finance, L.P., are all related as "parent or grandparent corporations" to Accredited Home Lenders, Inc. (See Exhibit C).

Accredited Home Lender's SEC Form 10-K (attached as C-1) states that, *"We are a nationwide mortgage banking company that originates, finances, securitizes, services and sells non-prime loans secured by residential real estate. We focus on borrowers who may not meet conforming underwriting guidelines because of higher loan-to-value ratios, the nature or absence of income documentation, limited credit histories, high levels of consumer debt, or past credit difficulties. We originate loans primarily based on the borrower's willingness and ability to repay the loan and the adequacy of the collateral. Our experienced management team has developed incentive programs, technology tools and business processes that focus our employees on originating non-prime mortgage loans with the financial and other characteristics that generate profits for us."* (Bold, Italic, and larger type font emphasis added by Plaintiff).

In other words, Accredited Home Lenders, Inc., (AHL) was designed to be and remained throughout its existence a *CLASSIC DEFINITIONAL SINE QUA NON PREDATORY LENDER.*

The full text of each of these Exhibits A, B, C, and C-1 are all incorporated by reference and their material content realleged herein as evidence (admissions of a party opponent) showing that Carrie Lynn Luftl's Loan was indeed securitized, contrary to Mark H. Muller's representations to the Court (See Exhibits D & E), as part of this Second Amended Complaint.

fraud, in violation of Article I, Section 10, Clause 1 of the Original Constitution, as well as of the Fourth, Fifth, Seventh, Ninth, and Fourteenth Amendments thereto.

6. Wherefore, Plaintiff prays for a reversal of all Florida foreclosures based on false "shell game" assignments and securitized notes.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k, Civil Rights Jurisdiction Pursuant to 42 U.S.C. §§1983 & 1988(a), 28 U.S.C. §§1331 and 1343, and over the adjudication of Plaintiff's pleas for declaratory judgment and injunctive relief against Florida state officials at all levels for disregard for Florida own state statutory and constitutional law pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

8. Venue is proper in this judicial district of the Middle District of Florida pursuant to 28 U.S.C. § 1391(c), because the real estate, subject of the named Class Representative and Plaintiff's individual (persona) litigation, is located in the Middle District of Florida, Fort Myers Division, and many or most of the transactions and occurrences giving rise to this litigation occurred within the territorial boundaries of the Middle District of Florida, including the foreclosure proceedings against Plaintiff Carrie Lynn Luft and the Ocala Agreements and Ocala mortgage banking clearinghouse Facility.

9. Plaintiff Carrie Lynn Luft's action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, in general, and by 15 U.S.C. §§1-15 and 42 U.S.C. §§1983, 1988(a) in particular, with regard to questions of antitrust and civil rights.

## INTRADISTRICT ASSIGNMENT

10. This lawsuit should be assigned to the Fort Myers Division of this Middle District Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Charlotte County, including but not limited to all events relating to the wrongful foreclosure in that certain case denominated: Charlotte Co. Circuit Court #06-1334-CA; Florida 2nd DCA #2D10-3807.

11. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (Federal Question) and §1343 (Civil Rights Jurisdiction).

## PARTIES

12. Carrie Lynn Luft resides in Charlotte County, Florida and the former title owner of and claimant by suit herein to that certain unique parcel of real property known as 139 Sinclair Street, SE, Port Charlotte, (Charlotte County), Florida 33952.

13. Citigroup Global Markets Realty Corp., (CGMRC), a New York corporation, is the original sponsor and final beneficiary (depositor of benefits received) of this complex transaction. Citigroup Home Mortgage Trust 2007-AHL3 is an affiliate of CGMRC into which the AHL pool appears to have been deposited.

14. The sponsor was organized in 1979 and is an affiliate of Citigroup Global Markets, Inc., a Delaware Corporation having its headquarters in New York City. The sponsor CGMRC maintains its principal office at 388 Greenwich Street, New York, New York 10013.

15. The sponsor was established as a mortgage banking company to facilitate the purchase of whole loan portfolios and servicing rights containing various levels of quality from "investment quality" to varying

degrees of "non-investment quality" up to and including real estate owned assets ("straw men", nominee placeholders, REMICS, CBO, MBS, etc.).

16.    The SEC filings for Citigroup Mortgage Loan Trust 2007-AHL3 (http://yahoo.brand.edgar-online.com/default.aspx?companyid=744390) confirm the close affiliation and relationship between Citigroup and Accredited Home Lenders., Inc, on the one hand and also provides further information online regarding its purpose and operations of Citigroup in relationship to AHL loans via SEC filings available on "Edgar" (see especially final bold highlighted text below):

**http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5252701-163012-297317&type=sect&tabindex=2&CompanyID=744390**

**The depositor has been engaged in the securitization of mortgage loans since its incorporation in 2003, although the sponsor has been engaged in the securitization of mortgage loans through other depositors since 1987. The depositor is generally engaged in the business of acting as a depositor of one or more trust funds that may issue or cause to be issued, sell and deliver bonds or other evidences of indebtedness or certificates of interest that are secured by, or represent an interest in mortgage loans. The depositor typically acquires mortgage loans and other assets for inclusion in securitizations from the sponsor.**

**The certificate of incorporation of the depositor provides that the depositor may not conduct any activities other than those related to the issue and sale of one or more series of securities and to act as depositor of trusts that may issue and sell securities.**

**After the issuance of the certificates, the depositor will have limited or no obligations with respect to the certificates and the trust fund. Those obligations may include cure, repurchase or substitution obligations relating to breaches of representations and warranties, if any, that the depositor makes with respect to the mortgage loans, to arrange for the Interest Rate Swap**

**Agreement or replacement instruments to be included in the trust, to appoint replacements to certain transaction participants, to prepare and file and required reports under the Securities Exchange Act of 1934, as amended, to provide notices to certain parties under the pooling and servicing agreement or to provide requested information to the various transaction participants.**

*The depositor does not have, nor is it expected in the future to have, any significant assets. We do not expect that the depositor will have any business operations other than acquiring and pooling residential mortgage loans, mortgage securities and agency securities, offering mortgage-backed or other asset-backed securities, and related activities.*

(Bold, Italic, and large type font emphasis added by Plaintiff).

17.     The highlighted text of the above paragraph raises an intriguing question: If Citigroup Home Mortgage Trust 2007-AHL3 "***does not have, nor is expected to have, any significant assets***" who was the owner of these residential mortgage loans?  A trustee is normally the legal owner of property held in trust---but the text here says, "does not have, nor is it expected in the future to have, any significant assets."  So a trustee exists for the purpose of "business operations" including "acquiring and pooling residential mortgage loans" but this trustee does not own these assets?  Then who does?  We are faced with the possibility that Citigroup Home Mortgage Trust is a fictitious business entity with no real business plan or purpose.

18.     Citi Property Holdings, Inc., is an Arizona Corporation based in Phoenix, with a major office in Tampa, Florida, but neither CGMRC nor Citi Property Holdings, Inc., (nor Citigroup Home Mortgage Trust 2007-AHL3) have ever been licensed or registered to do mortgage lending business in the state of Florida (No, to the best of Plaintiff's diligent investigations, really, never, not ever).

## THE FRACTURED CHAIN OF TITLE BY ASSIGNMENTS SHOW EQUIVALENCE, FUNGIBILITY, AND FUNCTIONAL IDENTITY OF NAMED PARTIES

19.    The Key Defendant in this case: CGMRC (although it filed suit against AHL concerning "the Luft Loan" in April 2008) was only the second-to-last assignee of Carrie Lynn Luft's loan after origination by AHL (and other intervening assignments). As shown in *Exhibit F*, CGMRC only appears in the recorded chain of title relating to "the Luft Loan" when it **granted** its first assignment on April 12, 2010; this assignment was granted to Liquidation Properties, Inc., "a Delaware Corporation whose address is 390 Greenwich St., New York, NY 10013" about 16 months after the final judgment of foreclosure against Luft by post-answer default [2] entered December 11, 2008 (See Court Minutes *Exhibit L*)

20.    The Affidavit of Brian J. Appell (See *Exhibit G*), also dated April 12, 2010, a "Vice-President" of CGMRC, confirmed the relationship of some of these parties (and, intriguingly, sought retroactively to "ratify" any irregularities in the transfer process) but his Affidavit does note explain when or how CGMRC had acquired title prior to April 12, 2010 to make any transfer.

21.    On November 12, 2008, AHL executed an "Assignment of Mortgage" Liquidation Properties, Inc., but on but on December 2, 2008, MERS acting

---

[2]    Carrie Lynn Luft's attorney at this time, William Jeff Barnes had failed to file an answer after the appearance and Amended Complaint substituting Liquidation Properties, Inc., for Accredited Home Lenders, Inc., as Plaintiffs. As noted throughout this Second Amended Complaint, Carrie Lynn Luft submits and contends that this substitution of parties constituted extrinsic fraud on the court voiding the judicial proceedings, in that all these entities, the Nine Heads of the Hydra, are all mere alter egos of each other, and in particular of CGMRC.

as nominee for Accredited Home Lenders granted an "Assignment of Mortgage" to American Home Mortgage Servicing, Inc., of Irvine, California. MERS had originally, acting as nominee for Accredited Home Lenders, granted an assignment of the loan to Accredited Home Lenders on July 7, 2006. (See *Exhibits H, I, and J*).

22. Given that CGMRC must have known of "the Luft Loan" no later than March 15, 2007 (the "Confirmation Letter" from AHL, see July 30, 2008, FAC SDNY in *Exhibit A*), it seems strange indeed, and Plaintiff submits that it is circumstantial evidence highly indicative of fraud, that CGMRC also became the final assignee upon Sheriff's sale after final judgment of foreclosure (See *Exhibit K*), despite the fact that the other corporate defendants played "musical chairs" with her note and "servicing rights" in the meantime.

### SUBSTITUTION OF PARTIES AS EXTRINSIC FRAUD

23. As argued herein below, the "feint attack" strategy of substituting Plaintiffs was an extrinsic fraud on the Court which led to the entry of a strange "post-answer default" against Carrie Lynn Luft in the Florida Circuit Court foreclosure series. Never, in the absence of the imposition of "death penalty" sanctions (e.g. for discovery abuse) has any so heavily litigated case been resolved by entry of default.

24. Plaintiff never knew whom to expect to meet or to whom to respond as an opponent in court precisely because the parties and their attorneys so promiscuously "swapped" their interchangeable but intimate roles in playing "Scrooge" or "Shylock" of the day during the 4 year mortgage foreclosure litigation (2006-2010) in Charlotte County Circuit Court.

25. Carrie Lynn Luft's Loan Originator: Accredited Home Lenders, Inc., (AHL) was the first and earliest mere alter-ego predecessor in interest) to Citibank Global Markets Realty Corp. According to information provided online by the California Secretary of State, Debra Bowen, AHL was chartered as a California Corporation with headquarters in California and a registered agent in New Castle, Delaware.

26. AHL (California SOS Entity Number C1665118, Filed May 14, 1990) filed its Chapter 11 Bankruptcy on May 1, 2009, in Delaware. At some time near or about June 13, 2011, Accredited Home Lenders, Inc., gave up its California Charter and a (closely related, essentially identical, but "reorganized") successor in interest, under the name Accredited Home Lenders Holdings, Inc., (California SOS Entity No. C3391430 with the same registered agent, James Ransom) filed papers of incorporation with the California Secretary of State on July 8, 2011.

27. Apparently, Accredited Home Lenders Holdings, Inc., now in fact seamlessly continues the business of the original AHL, because:

> On June 13, 2011, Accredited Home Lenders Holding Co. went out of business as per its Chapter 11 liquidation filing under bankruptcy. Accredited Home Lenders Holding Co. and its subsidiaries operate as a mortgage banking company in the United States and Canada. It originates, finances, securitizes, services, and sells nonprime mortgage loans secured by residential real estate. The company originates loans through independent mortgage brokers and direct sales force. Its wholesale channel originates nonprime mortgage loans through relationships with businesses that broker mortgage loans, including small mortgage bankers, local banks, and businesses that only broker mortgage loans.

**http://investing.businessweek.com/research/stocks/private/snapshot.as p?privcapId=24213**

28. AHL's Chapter 11 Bankruptcy Plan (either has not been entered or is otherwise unavailable to the Plaintiff at the time of the filing of this Second

Amended Complaint) should govern and control all aspects of the dissolution of Accredited Home Lenders, Inc., and the succession of Accredited Home Lenders Holdings, Inc., to AHL's assets and liabilities (including this present lawsuit against AHL and AHLH).

29.    AHL's general successor by reorganization may be AHL Holdings, Inc., but CGMRC has at all times lurked in the background of the Florida State Circuit Court Litigation.  Again, strangely, and strangely suggestive of Fraud, CGMRC NEVER substituted in as a party Plaintiff at any time during the litigation although "the Luft Loan" was acquired by or transferred to, first Liquidation Properties (which, according to Mark H. Muller, "is actually Citigroup" as explained to Judge George Richards in open Court).

30.    On October 23, 2008, Mark H. Muller represented to Judge Keith Kyle the Court that American Home Mortgage Servicing, Inc., was on that date the mortgage owner (See **Exhibit K** October 23, 2010 Court Minutes). In fact, MERS acting "as nominee" for AHL assigned the mortgage to American Home Mortgage Servicing, Inc., on December 2, 2008 (See **Exhibit J**); MERS having previously assigned the mortgage (on behalf of AHL) to AHL on July 7, 2006 (**Exhibit G**).    See also **Exhibit L: December Court Minutes.**

31.    It is certainly true that Liquidation Properties was later renamed Citi Property Holdings, and then to Lone Star Funds, a private equity firm (or closely related group of firms, "LSF5 Accredited Holdings," etc.) based in Dallas, Texas; Lone Star Funds, however, are also mentioned in **Exhibit C** as a "parent or grandparent corporation" to Accredited Home Lenders, Inc..

32.    Plaintiff submits that the "shell game" of ownership of her note and mortgage constituted an EXTRINSIC FRAUD on the Court, in that it was impossible (or all but impossible) for any attorney or party to know who was claiming ownership (and or which lawyers were representing which claimants/Plaintiffs) at any given moment.

33.    It was because of the "shell game" and an amended complaint and substitution of parties that Plaintiff Carrie Lynn Luft, who fought the foreclosure suit against her tooth and claw in the Florida Circuit Court, lost the foreclosure action against her as a result of a "post-answer default" followed by summary judgment.

34.    Again, Mark H. Muller went out of his way to create confusion both on the record and in the minds of the Plaintiff, her attorney, and two successive Judges, when at hearings held during October and December 2008, he stated that what had been set for hearing on one subject (an Order to Show Cause on one occasion, a summary judgment on another) were actually hearings on entry of final judgment by default. No matter which judge presided, Mr. Muller's word as attorney for the Banks was always superior to and accepted over and above any statement by Carrie Lynn Luft or her attorney.

35.    The Banking & Financial Corporations' ability to change identity at will obviously has no commercial purpose (AHL at the beginning became somehow Lone Star at the end, but AHL is a Parent of Lone Star). To be able to create and repeat these kinds of "feints[3]" in a five-year long fencing

---

[3]    Feints are maneuvers designed to distract or mislead, done by giving the impression that a certain maneuver will take place, while in fact another, or even none, will. In military tactics and many types of combat (of which modern civil litigation is merely an evolutionary avatar of "trial-by-battle") there are two types of feints: **feint attacks** and **feint retreats**. A **feint attack** is designed to draw defensive action

*Carrie Luft's Second Amended Complaint: Securitization of Mortgage Notes Destroys Both Personal*    13
*and Subject-Matter Jurisdiction and hence yields only Void Judgments of Foreclosure*

match between several different masked swordsman against one woman with (originally) substantial but nonetheless finite funds

36. Mortgage Electronic Registration Systems, Inc., ("MERS") was and is still a Delaware Corporation. MERS was never the owner of Carrie Lynn Luft's note and MERS admitted NEVER owns any mortgage notes.

37. Liquidation Properties was the penultimate of many entities posing as "servicers" of Carrie Lynn Luft's loan (one wonders why "services" would ever change DURING a litigated Court Case) and so the penultimate claimant to be named in the "shell game", but Liquidation Properties, Inc., was renamed (during the pendency of Carrie Lynn Luft's litigation) "Citi Property Holdings, Inc.", obviously admitting by implication that operates as an affiliate of some kind or subsidiary of CGMRC (see also ***Exhibit H***).

38. And as shown in ***Exhibit C***, Accredited Home Lenders (Carrie Luft's Originator) has a "parent or grandparent" called "Lone Star Funds", so that the first shall be last and the last shall be first and those who started out in

towards the point under assault. It is usually used as a diversion to force the enemy to concentrate more manpower in a given area so that the opposing force in another area is weaker. Unlike a related diversionary maneuver, the demonstration, a feint involves actual contact with the enemy. A **feint retreat** is performed by briefly engaging the enemy, then retreating. It is intended to draw the enemy pursuit into a prepared ambush, or to cause disarray. For example, on October 14, 1066, the Battle of Hastings (and the original freedom of the English people) was lost when King Harold's Saxons pursued Duke William's apparently retreating Norman cavalry. This forfeited the advantage of height and the line was broken, providing the opportunity to fight in single-handed combat on a neutral vantage point, a battle for which the Saxons were not ready. Citigroup Global Markets Realty Corp, and its allies, used both types of feints against Carrie Lynn Luft, but their most successful "feint attack" consisted of constantly changing the name and identity of the Plaintiff in the foreclosure suit so that Carrie Lynn Luft's new attorney (William Jeffrey Barnes) was in 2008 caught off-guard and confused, resulting in a procedural default from which Carrie Lynn Luft was unable to recover. The substitution of parties, however, was merely a feint, because there was no practical or commercial purpose or real need to substitute one head of the hydra for any other, the body and belly of the beast remaining constant.

the middle (i.e. Citigroup Global) are stuck there forever---and indeed, CGMRC was the purchaser of Carrie Lynn Luft's home at 139 Sinclair in Port Charlotte at the Foreclosure Sale, (*Exhibit M*).

39.     Plaintiff Carrie Lynn Luft alleges that all these "transfers of interest" amount to nothing more than a shell game used for political purposes to disguise the collectivization of real estate finance and the resultant effective abolition of private property in real estate.

40.     Defendants may well be aware that if the people of the United States realized that the government had used their "brand names" effectively to confiscate all real estate through the evanescent largesse of leveraged "liberal" lending, there might be trouble; there might even be riots, even threats of violent revolution resulting in, for example, uprisings and that the threat of such uprisings against the government-bank cartels might even require a confiscation of all privately owned firearms to enforce, by armed military repression of an aroused and angry population, if necessary, the final abolition of individual dominion and ownership of realty (and thus the ultimate triumph of communism as originally planned by Marx & Engels).

41.     Mark H. Muller, Esq., of Mark H. Muller, P.A., has been one of the regular attorneys for each entity named as a Defendant herein during the past three-four years of litigation.

42.     Mark H. Muller has engaged in continuing malicious prosecution against Plaintiff Carrie Lynn Luft by and through a campaign of lies, deceit, fraud on the court, and his conduct in this case has been the subject of at least one grievance filed by Plaintiff's one-time Attorney William Jeff Barnes. Mark H. Muller's greatest single act of fraud on the court was (in 2010 and again to this very United States District Court last year in this case) to deny

that Plaintiff's loan was securitized, even when a pooling and servicing agreement that he produced during the foreclosure litigation plainly showed otherwise (see *Exhibit N*, but see also *Exhibits A, B, C, & C-1, D & E*).

43.     Danielle Spradley, Esq., is (or at all times relevant to this litigation was) an attorney Ben-Ezra & Katz, P.A., has engaged in continuing malicious prosecution against Plaintiff Carrie Lynn Luft by and through a campaign of lies, deceit, and fraud on the court including but not limited to the original assignment by MERS as nominee for AHL to AHL; Danielle Spradley's greatest single act of fraud on the court was her assertion, repeated throughout her course of representation, that Liquidation Properties was (or ever could be) "the owner of the loan and final judgment in this case."

### COMMON ISSUES FOR CLASS ACTION with JURY DEMAND

44.     Plaintiff Carrie Lynn Luft, suing on behalf of herself and all others similarly situated, demands a trial-by-jury of all issue so triable arising from her complaint as follows:

45.     *Securitization is collectivization of ownership by extrinsic fraud and so annuls and voids individual obligations, subject matter jurisdiction, and all judgments entered after securitization of credit notes are and ought to be declared null and void.*

46.     All contract law, including the Uniform Commercial Code, adopted by the legislatures of Florida as in most every other state, derives from the Anglo-American common law which was fiercely individualistic and depended for its sense of justice and fairness on the identity and integrity of every individual, of the value of each person's word and promise, and of personal obligation from individual-to-individual.

47. The purpose of the law and government were to regulate interpersonal relationships in such a manner as to ensure fairness, equity, and even handed treatment among equals, and never to allow one group to have a greater or heavier hand than any other over each individual's life and prosperity. Such is the yeoman heritage of the English common law on which the Constitution and all American life grew up and evolved from the first settlements in Virginia at Roanoke and Jamestown to the present time.

48. Traditional notions of valid vs. void debts, as well as valid vs. void judgments, depend in large part on the ***correct identification of parties to any particular transaction or occurrence.*** Among the most important debts in the modern economy are those evinced by personal promissory notes. Such notes are the basic instruments of credit commerce in the United States and the most ubiquitous of all securities.

49. The ownership of promissory notes at common and statutory law (the UCC as adopted in Florida and almost every state in the union) depends upon and is determined by a combination of factors, fundamentally: (1) equitable possession and use, (2) legal title and ownership, determined by formalities of transfer including endorsement by allonges as expressly required under the UCC.

50. The practice of circulating secured notes by individual endorsement was critical to the formation of the United States itself, as such properly endorsed and individually guaranteed securities were the mode by which the new nation raised money to fund the revolutionary war (i.e. Continental bonds and currency).

51. Plaintiff Carrie Lynn Luft submits that the common law of individual identity and integrity was a cornerstone of all rights written into the

constitution, and that collectivization of debt can only be constitutional offensive to this heritage, so that securitization of debtors' notes directly, literally, and unconstitutionally abridges the common law rights reserved by the Ninth Amendment and implicit in all the others. 42 U.S.C. §§1981 and 1982 make it clear that as late as the post-war environment of the 1860s, the Anglo-American Common Law of Contract and Litigation was still unquestionably the cornerstone of all constitutional rights to acquire and maintain ownership of property. To be denied the right to trace one's indebtedness to a specific transaction with a specific person or entity at a specific time is to render the individual a slave to an anonymous collective.

## OUTLINE OF KEY LEGAL ARGUMENT:
## INTEGRITY OF INDIVIDUAL IDENTITY IS
## A BASIC PRESUMPTION, and underlying principle of
### Anglo-American Law and a
### Fundamental Constitutional Right

52.     On one level (her side of the story) Plaintiff Carrie Lynn Luft files this suit to show that her own disputed, purported mortgage originated concerning 319 Sinclair, in Port Charlotte, Florida, became a nullity immediately after origination. Pursuant to Florida Statutes §673.3021, as a result of Carrie Lynn Luft's notice of cancellation, made at the closing table, and her instructions to the representatives not to go through with the closing. In addition, Carrie Lynn Luft did not execute all documents, including the required HUD-1, but the final closing papers included no fewer than FIVE forged HUD-1 forms.

53.     The mortgage company which closed the loan (a now defunct entity called "First Trust Holdings") refunded the fees for the February 23, 2006, closing and requested indemnity from suit. Accordingly, AHL, Accredited Home Lenders, Inc., was never a Holder-in-Due-Course of Carrie Lynn Luft's note because the note was void due to fraud. Neither a Notice of Default or Notice of Acceleration were ever served prior to filing suit.

54.     On another level (the other side of the Story), Plaintiff Carrie Lynn Luft files this lawsuit to show that the separate parties allegedly involved in the sponsorship, origination, servicing, and marketing of notes are all essentially fictitious parts played to reify commercial transactions which did not and need not take place, but which serve to create a "market" in which severed interests based on real estate can be sold to investors for cash in an otherwise unproductive, entirely credit-based, non-substantive economy.

55.     Plaintiff Carrie Lynn Luft submits that this shell game or game of mirrors amounts to nothing but a fraudulent cover for a central-bank sponsored "brand-name bank implemented" scheme to expropriate all private property and render all individuals as rental tenants of the central-bank based government.

56.     Carrie Lynn Luft's mortgage note was originated, held, and securitized in what can only be called "the modern manner." The modern manner of origination, holding, and securitization tolerates, if it does not in fact foster, massive fraud-in-factum ("robo-signing"), failure of privity of contract (frivolous and manipulative substitutions or assignments, no rigor of insistence on individual party identity or integrity of substitutions or transfers of interest) violates the common law, and violates the U.C.C. as adopted in Florida Statutes Chapter §673.

57.     And furthermore, because judicially tolerated fluidity of fungible fictitious figural identities retroactively impairs the obligations of contract by destroying chain of title (even as MERS operations seem totally to dispense with title, see especially **Exhibits F-J** in this case), such nullification of obligations is automatic and guaranteed by the Constitution, which like the Anglo-Saxon Common law is predicated on individual responsibility which can only be established by individuals or steady and stable corporate entities. The Anglo-American Common Law and the U.S. Constitutional regime are both built upon individual, not collective, not fungible or interchangeable caste or class or occupational identities[1].

---

[1]     Citigroup may actually be exemplary of the modern norm of operation, as an article in the New York Times illustrated by explaining, *"Brad S. Karp, a lawyer representing Citigroup, sought to assure Judge Huxelle that the company had significant incentive*

58.  Mark H. Muller, Michael D'Onofrio, Danielle Spradley, Ben-Ezra & Katz, Quarles & Brady, L.L.P., and Mark H. Muller, P.A., and other individual attorneys and law firms for Citigroup Global Markets Realty, Corp., and other Corporate Financial Defendants, went to extraordinary lengths in Charlotte Co. Circuit Court Case #06-1334-CA; Florida 2nd DCA Case #2D10-3807.

59.  In addition to all of his aforementioned actions in support of Citigroup's continuing fraudulent "collective" identity spread out among at least four named entities, and moreoever dissembling directly on the record, Mark H. Muller lied in court filings to this U.S. District Court (as shown in *Exhibits D & E*), to conceal the fact of securitization of Carrie Lynn Luft's note, and to disguise or mask the fact that AHL was never a holder-in-due-course of Carrie Lynn Luft's note.

60.  Mark H. Muller obviously supports a notion of fungible and or collective identities among foreclosure plaintiffs and debt collection agents which is utterly incompatible with the Anglo-American norms of contract law and property ownership.  George Orwell showed in his novel *1984* how fluidity of identity and truth was critical to the highly centralized power of the Government of Oceana.

61.  As in *1984*, even simple mathematical equations neither hold nor are entitled to any status as "self-evident truths" or inviolate rules for a government, including a court-administered judicial officer-cum-corporate regime for the expropriation of all private property, such as that which is

---

*not to violate securities laws, given that it had signed statements promising not to do so and noting that it had changed its entire senior management team since the events of 2007."* (http://www.nytimes.com/2010/09/25/business/25sec.html?_r=0).

seizing and collecting and stock-piling real property for central-planning purposes in America today.

62.    So long as the Constitution remains the law of the land, and the Constitution depends on individual identity and guarantees individual rights, including the rights to make contracts and own private property, collectivist notions of fungible or interchangeable "class" identities, such as "mortgage servicers", "assignees", "originators" and other categories of entities which appear to last only so long as they serve the collective purpose, since they own no property, have no assets of any kind, and engage in no business except holding notes or "claims" to property, pending seizure. In short, the failures of securitization are the failures of collectivization and communism, not of capitalism.

63.    In the present case, then, this Court has the opportunity and the obligation to hear evidence and argument, find, hold, and rule, and to declare and adjudge whether true and meaningful identity, and integrity of identity, really is a fundamental right inherited from English Common Law and embodied in the Constitution. Plaintiff Carrie Lynn Luft prays that this Court will define that identity, and integrity of identity, are unwritten presumptions underlying all Anglo-American Law, and that just as one woman is not the same as every other woman, not every Central-Bank sponsored corporate financial entity is the same as every other Central-Bank sponsored corporate financial entity---true identity, and integrity of identity, are the well-spring of freedom and constitutional law and government.

64.    AHL was thus, *ab initio,* legally unqualified and utterly ineligible to file a suit for equitable foreclosure, although AHL might easily have brought an action at law for breach of contract, or an equitable suit for unjust

enrichment, and specific performance (though neither of these complaints would have entitled AHL to the special provisions of foreclosure procedure or the ability to defend securitization of Carrie Lynn Luft's note).

## IDENTITY ISSUES, FUNCTIONAL CATEGORIES, "HOLDERS"

65.    Holder-in-due-Course doctrine is one of those statutory elaborations of, up, and from the Anglo-American common law which depends most directly on the proof and integrity of identity among parties.

66.    Without the ability to prove holder-in-due course status, no party can institute foreclosure under the laws of the State of Florida. And quite simply, foreclosure may be an easy contractual remedy, but holder-in-due-course doctrine operates to protect people like Carrie Lynn Luft from any presumption that every breach of contract regarding real estate can or should result in foreclosure or any other seizure of property.

67.    The curious concatenation of facts that surrounds CGMRC makes a full circle starting (so far as we know) in March 2007 when CGMRC operated as an "innocent" purchaser of a pool of mortgage notes. Then CGMRC or an affiliate acted as a "sponsor," or the pool, identified betimes as an original "investor" and betimes as a beneficiary claiming interest in the note as of foreclosure. What are the purposes or functions of shifting the notes and interests around from entity to entity? Plaintiff Carrie Lynn Luft submits that the purpose is concealment of collective identity through a false diversification of fraudulent identities.

68.    Yet still CGMRC never had any recorded assignment of record of its own until it granted an assignment of "the Luft Loan" note to Liquidation Properties, Inc., on April 12, 2010, a year and a half after a post-answer

default judgment was entered against Carrie Lynn Luft in favor of Liquidation Properties, Inc., on or about December 11, 2008.

69.     And yet the rendition of judgment in favor of Liquidation Properties, Inc., in itself stands out as curious because at least three "assignee Servicers" or "owners" were identified in Court records during hearings held at Port Charlotte during the last quarter of 2008, and judgment was rendered in the name of Liquidation Properties in whose name the foreclosure suit had never been prosecuted prior to that date.

70.     Taken together all this circumstantial and direct evidence constitutes not merely a preponderance but clear and convincing evidence that the entire AHL-to-Luft debt extension and foreclosure cycle was a fraud. Accordingly, the foreclosure rendered in favor of the expropriation of Carrie Lynn Luft's home ought to be declared null and void. The nullity and voidness arise from many additional factors, not least because, at the beginning, Carrie Lynn Luft attempted to rescind her mortgage and note but was prevented from doing so.

71.     Plaintiff Carrie Lynn Luft, asserts that her own case is indeed typical of the proposed class or classes defined here. The confusion of identities among the "Servicers", "Investors", "Depositors" and "Owners" of these mortgages, securitized notes, or pools of notes serves to mask the non-commercial, non-contract, collectivization of corporate interests which in and of itself is a mask for the government sponsored (if unstated) program to erase private property from the map of North America.

72.     Further, it is typical of the class, that consumer credit notes, especially but not limited to mortgage notes, once securitized, become nullities under common and statutory (UCC Negotiable Instrument) law, owing to the

obliteration of real identities of "holders", who are all effectively one-and-the same. The quasi-official government policy relating to credit extensions and the securitization of notes has as its primary, if not its sole, purpose: to collect and foreclose on real estate properties based on these nullities.

73. Thus, again Carrie Lynn Luft's case is typical of the class which she proposed and offers to represent, because to collect and foreclose on mortgaged real estate according to these nullities constitutes a massive extrinsic fraud on the Courts.

74. The fraud here shows itself to be and stands as extrinsic in that financial institutions/banks/creditors conceal or diminish the fact of securitization and securitization never appears as a matter of record in any foreclosure case.

75. The extrinsic nature of the fraud results from the fact that, throughout Plaintiff Carrie Lynn Luft's litigation and that of the very large Florida class which she represents, the real party in interest remained and remains unknown while changes in the "brand name" or "claimant" to real party status changes without proper documentation, and even when documented, without visible or even imaginable practical, commercial purpose.

76. The game of musical chairs is not so much fun when matters of life, liberty, and property hang in the balance, and when one player or group of players controls the entire supply of chairs and keeps changing the number of chairs and players for no apparent reason, yet this is what happens in mortgage note collection and mortgage note foreclosure.

77. Litigation is normally structured as an adversary contest between two parties, but when one side can and does gain strategic advantage by appearing and disappearing, changing face, and requiring further responsive

action, this is an extrinsic manipulation of the adversary system which is simply intolerable and unfair: the individual is always at a disadvantage against a corporation, but when corporations dance in and out of litigation with the same individual, imposing greater costs on the individual thereby (i.e. having to file a new answer to each new substituted claimant), there is simply no level playing field and no traditional notion of fair play or substantial justice.

78.    In short, the identity and steady (continuous) integrity of identity of parties is absolutely critical to due process of law, especially when the individual faces the collective. An individual defendant, with or without attorney, has an unqualified right to know who she faces, what is their true position and interest, and when she must respond to whom, in order to defend her personal homeownership rights.

***79.***    Defendant Mark H. Muller's repeated efforts to conceal, dissemble, falsely deny and generally to obfuscate the securitization of Plaintiff Carrie Lyn Luft's note manifested itself particularly in his filings last year in this very case. While Muller at times appeared quite uncertain which Plaintiff he might be representing on any given day, as discussed above, he was remarkably certain about the question of securitization. See, e.g.: ***Exhibit D:***

> Mr. Lincoln waxes poetic about securitized mortgages and pooled loans and how "securities are not actually backed by any mortgages at all, because the chain of title has been lost.....***He apparently does not know the simple and uncontested fact that Luft's mortgage was never securitized.***[5]

---

[5]    Document 18: "Response by Defendants, Citigroup Global Markets Realty Corp. and Citi Property Holdings, Inc., F/K/A/ Liquidation Properties, Inc., to Plaintiff's Emergency Request for Additional Time to File Motion for Leave to

*Carrie Luft's Second Amended Complaint: Securitization of Mortgage Notes Destroys Both Personal*    26
*and Subject-Matter Jurisdiction and hence yields only Void Judgments of Foreclosure*

And see also *Exhibit E*:

> ...**the simple fact is the *Luft's mortgage was never securitized*.**[6]

(Italic emphasis in Mark H. Muller's original text---apparently it was very important for Muller to mislead the Court, directly lie, and dissemble regarding the securitization of Plaintiff Carrie Lynn Luft's note; bold emphasis added by Plaintiff).

80. Securitization can often be inferred from the name of certain obviously "ersatz" Plaintiffs with names such as "DB502011-A Trust" or "Certificate Holders for XYZ 2012 Trust" or even "Citigroup Home Mortgage Trust 2007-AHL3" which name entities which (like Liquidation Properties, Inc.) have no physical addresses, no commercial functions or viability but merely operate as "accounts" from which to manage (or simulate the management of) mortgage note pools.

## NOTES ON THE OPERATIONAL ADVANTAGES OF TRUST SECURTIES AS TAX SHELTERED REMICS

81. Mortgages in the modern American financial world are routinely transferred through MERS (the Mortgage Electronic Registration System, Inc., (See, e.g. 2010 78 *U Cincinnati Law Rev.* 1359 Christopher L Peterson *Foreclosure Subprime Mortgage Lending And The*

---

Amend," page 5, ¶16, Signed and Served by Mark H. Muller on May 8, 2012, in Middle District of Florida Case Number Case Number 2:11-cv-703-FtM-29-SPC.

[6] Document 19: "Response by Defendants, Citigroup Global Markets Realty Corp. and Citi Property Holdings, Inc., F/K/A/ Liquidation Properties, Inc., to Plaintiff's Third Verified Request for Additional time to File Motion for Leave to Amend", page 6, ¶18, n. 3, Signed and Served by Mark H. Muller on May 29, 2012, in Middle District of Florida Case Number 2:11-cv-703-FtM-29-SPC.

*Mortgage Electronic Registration System*) copy, without being recorded.

82.     In modern securitized practice, as Judge Walt Logan learned much to his dismay in the July 2005 colloquy with the lawyers for the Mortgage Electronic Registration System in *MERS v. Azize*, 6th Judicial Circuit, Pinellas County, notes underlying the mortgages, as negotiable instruments, are often transferred or assigned by mere delivery without a recorded assignment or notice to the borrower (which is to say with none of the formalities required by the common or statutory law of commercial paper, secured lending, or property ownership).

83.     A defendant credit-debt owing consumer (mortgagor homeowner) has no method to ascertain easily or reliably who in fact owns the note, within the narrow time frame allotted to file an answer.

84.     Monetized, circulating mortgage notes lacking endorsements and allonges as required by the common law and the Uniform Commercial Code as adopted in Florida must be declared null and void, not merely as violations of law, but as infringements on the fundamental rights to know the identity of parties to any written contract and to privity of contract with one's choice of contracting partners.

85.     A fundamental element of the collection and foreclosure of any secured claim and a fundamental, constitutionally protected right of property ownership is the right to require strict proof of whether a party claiming the right to foreclose owns the note and mortgage.

86.     Carrie Lynn Luft contends that the Florida Circuit court litigation and it's final judgment was a farce, null and void, on account of the dynamic of securitization, which determines that *NONE OF THE NAMED*

***CLAIMANTS/PLAINTIFFS ACTUALLY OWNS OR OWNED*** (at any relevant time, anyhow) ***HER NOTE AND MORTGAGE***.

87.    The failure of the Florida State Circuit Court Plaintiffs' (in Charlotte Co. Circuit Court 06-1334-CA; Florida 2nd DCA 2D10-3807, identified collectively as the Corporate Finance defendants herein) to establish standing as holders-in-due-course of Carrie Lynn Luft's mortgage note was carefully, fraudulently disguised through the purported transfers among the several successive foreclosure claimants **(See, again *Exhibits F-J*),** even as these transfers were (or would have been, had any party among the State Circuit Court Plaintiffs actually owned anything to transfer) void as (a) the Corporate Finance Defendants had no standing as holders-in-due-course and (b) even if they had had such standing, these transfers violated the terms of the Pooling and Servicing Agreement which governs acquisitions by the Mortgagee or transfers among mortgagees.

88.    The Pooling and Servicing Agreement applicable to Carrie Lynn Luft's mortgage extension of credit and foreclosure case was produced to her in response to discovery requests 2 ½ years after the just prior to entry of final judgment against her, and is attached as ***Exhibit N*** to this Second Amended Complaint.

89.    AHL, the (original putative, "claimant") mortgagee in Carrie Lynn Luft's case acted as Trustee of an asset backed certificate security of some kind. The security, set up as a trust, acquires mortgage notes, pools them and then registers with the SEC, issues and sells securities secured or backed by the mortgages it holds. The investors in these pools (ostensibly, supposedly) receive interest or principle, or both, from the mortgages assigned to those specific securities or obligations.

90. The individual mortgage notes, as negotiable instruments, are necessarily obliterated in the securitization process. No individual investor in any pool owns any one single note, or expects to receive income from any particular pool which he shares with no others. Nor do individual investors know or care in whose homes they have part equitable interest. Each "trust" pool includes both performing and non-performing notes. The result is mish-mash of inseparable, irreducible interests. Holder-in-Due Course status is impossible, as is privity of contract. Securitization of notes destroys the value of security interests (notes) pooled.

91. The manner in which the trust acquires the mortgages, issues the securities and pays the income from the mortgages to investors, is governed by the trust's pooling and servicing agreement (PSA).

92. Carrie Lynn Luft's mortgage security (trust) was organized as a Real Estate Mortgage Investment Conduit (REMIC). As a REMIC, the trust's investors receive significant tax benefits, but to receive those benefits, the trust must comply with the US Treasury regulations governing REMICS. 26 USCA §860-D-1. The terms of the PSA require that the trust does not operate or take any action that would jeopardize its REMIC status.

93. Since the trust was organized as a REMIC, the investors received certain tax benefits on the income that passed through the trust to them. Section 26 U.S.C.A. § 860D(a)(4) defines a REMIC as an entity that as of the close of the 3rd month beginning after the startup day, and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments with respect to which there are reasonable arrangements designed to ensure that residual interests in such

entity are not held by disqualified organizations (as defined in section 860E(e)(5))[7].

94.     Section 26 U.S.C.A. § 860G (a)(3)(i,ii) defines a qualified mortgage as (A) any obligation (including any participation or certificate of beneficial ownership therein) which is principally secured by an interest in real property and which (i) is transferred to the REMIC on the startup day in exchange for regular or residual interests in the REMIC,

95.     http://www.courts.state.ny.us/reporter/3dseries/2013/2013_50675. htm 5/2/2013, **Wells Fargo Bank, N.A. v Erobobo** (2013 NY Slip Op 50675(U)) Page 12 of 13 (ii) is purchased by the REMIC within the 3-month period beginning on the startup day if, except as provided in regulations, such purchase is pursuant to a fixed-price contract in effect on the startup day.

96.     Thus to qualify for the REMIC tax benefits, the mortgages upon which the securities are based must be acquired by the Trust within three months of its start up date.

97.     While section 26 U.S.C.A. § 860D(a)(4) permits a REMIC to contain some portion of non-qualified mortgages, it is unclear how many unqualified mortgages are permitted without losing tax status.

---

[7]     This Section 26 U.S.C. §860E(e)(5) in turn defines "disqualified organization" to mean or include (A) the United States, any State or political subdivision thereof, any foreign government, any international organization, or any agency or instrumentality of any of the foregoing, and (B) any organization (other than a cooperative described in section 521) which is exempt from tax imposed by this chapter unless such organization is subject to the tax imposed by section 511.     In short, the purpose of a REMIC appears to be to disguise the essential role of government in planning and regulating these securities, but to give REMICs all the benefits of government tax free status.

98.    This background information is relevant to understanding part of the motivation behind the creation of mortgage backed securities out of pooled or bundled notes allegedly held in trust, and also the motivations for lying to consumers and concealing from the courts the true nature of securitized transactions.

## SECURITIZATION CONCEALS, DISGUISES, OR OBSCURES KEY INFORMATION FROM CREDIT APPLICANTS AND FINANCIAL SERVICES CONSUMERS: *CONTRACTING PARTIES*

99.    In Florida, as elsewhere, only the owner of mortgage note can institute a foreclosure suit or authorize such a suit to be issue. However, the identity of the owner of the note and mortgage is information that is often in the exclusive possession of the party seeking to foreclose.

100.    Florida Courts have since at least 2005 tacitly adopted (coopted, forced, and/or corruptly by the Banking and Financial Services industry) into formulating and applying a public policy of overt jurisprudence and case management which blurs the lines between individual party identities, especially of corporate credit-extending and other financial entities, and all but obliterates certain common law and statutory doctrines such as privity-of-contract and holder-in-due course doctrine.

101.    Phrased more simply: no one knows with whom they are doing business in the finance and credit service industry anymore, neither in daily life out-of-court nor in court; all the corporate defendants named herein appear to work together in a completely interchangeable "fungible" manner which is inconsistent with Florida common and statutory law of contract, negotiable instruments, and secured transactions.

102. The modus operandi of the current Circuit and Appellate Court bench and bar in Florida effectively renders and treats all obligations as collectively owned and collectively receivable obligations of the individual to the collective body politic, which includes the many headed hydra of a single state controlled and operated "banking system."

103. This banking system artificially divides into a large but finite number of immediately fungible or interchangeable "brand names" merely for purposes of causing consumer confusion and to create the appearance of free-market competition.

104. The practical reality is that all nine (or n-infinity) heads of the hydra act in lock-step with regard at least to one final goal: central bank, i.e. collective, state, ownership of all private property in real estate, or effectively, to all private property of whatsoever kind or denomination.

105. Plaintiff Carrie Lynn Luft asks that this Court admit evidence and argument, to declare and adjudge, whether either the claim and issue preclusion doctrines of ***Res Judicata*** or ***Rooker-Feldman*** (often defined as the state-to-federal transposition of ***Res Judicata***) will induce this court to tolerate a wholesale, systematic, and obviously intentional and agreed disregard of fundamental substantive and procedural rights nominally afforded "black letter law" as a matter of custom, practice and policy in the Florida State Courts.

106. These judicial customs, practices, and policies aggravate and compound each individual instance of fraud arising from each securitized mortgage note transaction and create a state-wide system or scheme denying homeowners' fundamental rights both to substantive and procedural due process of law on a scale that can be compared to nothing in the history of

the world except the "utopian" vision of replacement of the modes of ownership and production conceived by Karl Marx & Frederick Engels, and 165 years of their Communist, Fabian, and Trotskyite Socialist followers[8].

107. Will this Court uphold and sustain the judgment against Plaintiff, find and declare such a judgment insulated from collateral attack, or hold it to be a just finality of judgment, because of **Res Judicata** or **Rooker-Feldman**, (Charlotte Co. Circuit Court 06-1334-CA; Florida 2nd DCA 2D10-3807)?

108. In Plaintiff's case and in two-to-four hundred thousand others like hers, the Florida Courts have turned a blind eye towards and tacitly tolerated "securitization of notes".

109. Recent amendments to Florida law ostensibly pretend and purport to strengthen the requirements that paperwork be in order, but at the same time reduce the procedural safeguards and protections available to homeowners in foreclosure. This is merest, rankest hypocrisy on the part of the Florida legislature, because no increase in "formal" requirements will help any homeowners if "procedural" streamlining of foreclosure cases means that no one need ever actually examine foreclosing parties' compliance with the law.

110. The collectivization of interests and obliteration of individual identity and integrity prompted and promoted by securitization of debt breaches all the substantive norms and guarantees of common law and constitutional

---

[8]     Apparently, these views are gaining popularity. Two weeks after the first inauguration of President Barack Hussein Obama, Newsweek Magazine, on February 6, 2009, sported a cover intoning, "**We are all Socialists Now**." Well, maybe all of THEM are socialists, but not all of us, certainly not those who wish to own their own homes.

rights against state impairments of obligations of contract and Fifth Amendment bars against Federal takings without due process of law.

111. A key aspect of mortgage note securitization is that it is (or was at all relevant times during the boom) a secret use of mortgage notes, which was never (and still is never) disclosed to the ordinary consumer credit-applicant or "borrower", nor to the litigants in mortgage foreclosure suits.

112. Neither credit applicants nor existing credit-note-borrowers have any means to ascertain in advance or to anticipate with which "brand name" corporate financial institutions or fictitious collection "servicers" or other entities they may be dealing with.

113. The consumer in this securitized collectivist credit environment is left in an impersonal world of no predictable or ready officers or even offices to deal with so that "servicers" exist merely to collect, and never to provide "service" of any kind. If individuals on one side of a contract have no "community" relationship with individuals with whom they must deal on the other side of a contract, then the entire Anglo-American theory of contract law and property ownership has effectively been abolished, because the constitutional norms involved are those of community interests and mutual respect for rights and law---strangers cannot be expected to have any predictable concern for the rights or interests of other strangers.

## SECURITIZATION CONCEALS INFORMATION FROM CONSUMERS REGARDING THE SUBSTANTIAL VALUE AND EFFECT OF THEIR PROMISSORY NOTE TRANSACTIONS

114. Defendants never disclose securitization of mortgage notes to consumers (prospective credit applicants or consumer-borrowers) either before or during the foreclosure process. In fact, although it is a standard

industry practice, the fact of securitization is treated as a great secret, never to be disclosed until or, in fact, unless compelled to do so.

115. By contrast, the potential transfer or assignment of "servicing rights" is always immediately and routinely disclosed at or before the closing of any mortgage contract.

116. This dually disjunctive disclosure and non-disclosure in itself is a deceptive and misleading practice, without conveying essential information to the consumer.

117. Plaintiff alleges that, if disclosure were made, borrowers might realize and become aware that they are being cheated, deprived of a large part of the beneficial interest in the negotiable (actually "monetized") instruments notes which their notes become immediately pursuant to 12 U.S.C. §1813(l).

118. Consumers thus are routine deceived passively by withholding information that their notes are going to be sold and made into marketable securities immediately upon approval/closing, and thereafter circulated at face value like currency (as "money or its equivalent").

119. This disparity in information between issuers of and applicants for credit amounts to price-fixing and market manipulation in violation of the Antitrust Laws of the United States. 15 U.S.C. §1-15.

120. If consumers were provided full information, they would be able to demand lower rates or otherwise to share in the benefits of securitization, and the fraudulent nature of the securitized transaction would be mitigated, although the identity of the parties would still be obliterated upon securitization. This fact too could and would affect consumer behavior and access to and participation in the marketplace.

121. For all these reasons, creditors keep securitization secret from credit applicants.

## SECURITIZATION REQUIRES OFFICERS OF THE COURT TO ENGAGE IN A CONSTANT COVERUP & DECEIT AMOUNTING TO CONTINUOUS FRAUD ON THE COURT

122. In the context of mortgage foreclosure litigation, in order to enforce the disconformity of written law (common law precedent as well as statutory) against and away from actual lending and credit-finance practice in the Courts of the State of Florida, mortgage foreclosure attorneys including but not limited to the Defendant Law Firms, acting as officers of the Court, have persuaded the Florida Circuit Courts to engage, with the tacit approval of the legislature, in willful blindness bordering on fraud in most if not all foreclosure cases.

123. Florida Circuit Court judicial "rocket docket" customarily, and as a matter of policy and procedure already run roughshod over due process of law and the legislature continues to approve ever wilder and more oppressive forms of "rocket-docket" procedures which effectively preclude meaningful litigation of privity of contract and holder-in-due course challenges to securitization notes and collectivization of debt obligations

124. In order to process the immense stream of private property foreclosures as private property becomes quasi-public "corporate bank real estate owned", the Florida Courts have been forced (or have decided forced certain resistant Judges, e.g. Walt Logan of the 6th Judicial Circuit in Pinellas County after his "common-law, common-sense, and UCC consistent" rulings against MERS in August 2005) to abandon all traditional notions of

burdens and standards of proof of both personal and subject-matter jurisdiction.

125. The Florida Second District Court of Appeal's reversal of Judge Walt Logan's *sua sponte* investigation of MERS marked a major turning point in Florida Foreclosure Law---instead of constantly advising a court to assure itself of its own jurisdiction, the Florida Courts now demand a court avoid interfering with or questioning matters jurisdictional standing and identity of parties. ***Mortgage Electronic Registration Systems, Inc. v. Azize***, **965 So.2d 151 (Fla.App. 2 Dist. 2007).**

126. The entire judicial process in the State of Florida has accordingly become corrupted almost beyond recognition as part of the Anglo-American common law judicial tradition, even prior to the recent enactment of Florida HB 87 and Senate Bill 1666 during the just past 2013 legislative session.

127. In short, the politically and economically motivated struggle to hide and create acceptance of securitization despite its plain illegality has rendered the Courts of the State of Florida judicially incompetent.

128. In Plaintiff Carrie Lynn Luft's foreclosure case and the substantial class of others referenced in the paragraph above, it is perfectly plain and even uncontroversial that the State Courts of Florida routinely allow claims and enter judgments against private (individual or family) homeowners and in favor of (institutional) Plaintiffs who cannot and do not meet the basic "black letter" common and statutory law requirements for standing to bring suit in the mortgage foreclosure context: namely privity of contract and its UCC negotiable instrument avatar: holder-in-due-course doctrine.

129. Where the Banks and attorneys have so subverted the judicial process that the overwhelming statistical norm of judgments in Florida reflects a

complete disconformity with the black-letter statutory and constitutional law of this state, can finality of judgments still be allowed under the U.S. Constitution as a matter of both procedural and substantive due process?

130. Plaintiff Carrie Lynn Luft, as the basic legal premise and assumption in this lawsuit, submits that in the absence of specific statutory amendment, the common law of contract and property are constitutionally guaranteed to her and to all persons similarly situated, first by Article I, §10, Cl. 1, then by the Fourth, Fifth, Seventh, Ninth, and Fourteenth Amendments.

131. With specific reference to the adoption of the common law as a norm of civil rights enforcement, Title 42 U.S.C. §1988(a) specifically provides:

### (a) Applicability of statutory and common law

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

### CLASS ALLEGATIONS

132. This Class Action is being filed by Plaintiff Carrie Lynn Luft, pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and others similarly situated in the State of Florida.

***133.*** The primary class of individuals similarly situated includes those united by the following factual, historical, and legal/litigation elements:

> *(1) all natural persons who as Florida homeowners suffered judicial foreclosure and were thereby deprived of their homes by mortgage judgments entered in favor of Plaintiffs acting and filing on claims arising from securitized notes*
>
> *(2) which Plaintiffs could not or did not show standing upon the initial filing of their complaints and never recorded the ORIGINAL note afterwards, and*
>
> *(3) which Plaintiffs accordingly could not or did prove good "unified" legal and equitable standing,*
>
> *(4) which judgments have been entered entered within the relevant statutes of limitations for the nullification of void judgments.*

134. On behalf of herself and the class or classes herein represented, Plaintiff complains, requests, and now sues for declaratory judgment, injunctive relief, and damages not only against the nominal bank "Plaintiffs" (in the underlying state foreclosure cases, but also against the defendant law firms and attorneys (collectively "Law Firm Defendants") and other Defendants considered "debt collectors" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), and who took actions to deprive homeowners of their property without affording them full benefits of the contract law or judicial procedures of the state of Florida which would be available to defendants other than private property residential homeowners.

135. Plaintiff Carrie Lynn Luft is currently unsure of which other defendants are debt collectors within the meaning of the FDCPA because this is concealed by Defendants and Plaintiff Carrie Lynn Luft will amend or supplement this complaint when such is ascertained.

136. Plaintiff Carrie Lynn Luft brings this action on behalf of herself and all other persons similarly situated, as members of a proposed Second and more limited and specific Plaintiff Class located in Florida.

137. A second more specific class that Plaintiff seeks to represent is defined as:

> **All natural persons who have been named defendants in Florida State mortgage foreclosure actions by Law Firm Defendants, within 8[9] years preceding the filing of this complaint where the (State Court) Plaintiff Bank or one of Plaintiff Bank attorney purchased the home and property, regardless of whether the State Court Plaintiff satisfied the standing requirements outlines for the first class above.**

---

[9]    Plaintiff traces 8 years from July 2005 as the approximate date of the equivalent of "Custer's Last Stand" for the traditional strict construction of common and statutory law against the collectivist mentality. Judge Walt Logan of the Sixth Judicial District in and for Pinellas County, acting **sua sponte,** grilled the attorneys for MERS and, finding neither "holder-in-due-course" nor any possibility of "holder-in-due-course" status in MERS, dismissed a slate of twenty foreclosure suits. The reaction to and ultimate Florida 2DCA reversal of Logan's order spelled the end of the "Common Law Cavalry" support for strict construction of law, and the triumph of "let the Collective Consume the Private, so long as it does so stealthily, under color of law and with the ability to accuse homeowners of the reckless and irresponsible borrowing habits into which financial service marketers intentionally led them."

138.  This action has been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil procedure.

139.  This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23(b) (1), 23(b) (2), 23(b) (3), and/or 23(c) (4)(A), however, it is Plaintiff Carrie Lynn Luft's current intent to seek certification under F.R.C.P 23(b)(2) seeking primarily equitable relief, statutory damages, and attorneys fees.

140.  **Existence of an Identifiable Class** - The two proposed Class definitions are sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member.

141.  Members of the Class may be identified from records maintained by or the Florida State Circuit Courts, Law Firm Defendants, various Bank and property records and by reviewing the named Plaintiff Carrie Lynn Luft's and defendants in all actions filed by the Law Firm Defendants within the last four years for the second class, within the statute of limitations for nullification of void judgments with regard to the first class.

142.  **Numerosity of the Class** - Fed. R. Civ. P. 23(a) (1): The members of all Classes are so numerous that joinder of all members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff Carrie Lynn Luft, but is ultimately a finite class within the state of Florida and can be obtained from Defendants and from various bank and court records.

143.  Class members can be notified of the pendency of this action based on those records, or by any means used by the defendants to notify them of the underlying foreclosure suits.

144. The disposition of the claims of the Class members in a single action will provide substantial economic and legal benefits to all parties, including the benefit of conservation of litigation expenditures and to the Court in terms of conservation of judicial time and resources (aka Judicial Economy).

145. **Existence of Common Questions of fact and Law** - Fed. R. Civ. P. 23(a)(2) Plaintiff Carrie Lynn Luft, as Class Representative, alleges that the questions of law and fact relating to their claims are common to the claims of the class and the claims predominate over any questions affecting solely individual members, in satisfaction of rule 23(a)(2). These common legal and factual questions include:

• Whether defendant debt collectors, by filing foreclosure actions without proof of standing, and first foreclosing and then seeking to evict Plaintiff Carrie Lynn Luft (and all other members of her class) without having an assignment and/or possession of the promissory note, without a proper assignment of the mortgage, creating and using improper documents created by them to foreclose, and when they knew or should have known of the fraudulent scheme involved in securitization have violated:

- the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by engaging in unfair and unlawful debt collection practices.

• Whether Plaintiff Carrie Lynn Luft and Class members have been injured by Defendants' conduct;

• Whether Plaintiff Carrie Lynn Luft and Class members are entitled to compensatory damages, and the amount of such

damages; and

- Whether Plaintiff Carrie Lynn Luft and Class members are entitled to statutory damages and the amount of such damages.
- Whether Plaintiff Carrie Lynn Luft and Class members are entitled to legal costs and fees.

146. **Typicality** - Fed. R. Civ. P. 23(a) (3): Plaintiff Carrie Lynn Luft claims are typical of the claims of the Class because defendants initiated suit against them without having an assignment of the note and mortgage, creating fraudulent documents to foreclose, and when they knew or should have known about the fraudulent scheme of securitization. Furthermore, all members of the Class are similarly affected by defendants' wrongful conduct.

147. **Adequacy - *Fed. R. Civ. P. 23(a) (3) (4):*** Plaintiff Carrie Lynn Luft is an adequate representative of the Class because Plaintiff Carrie Lynn Luft's case is parallel to and her interests entirely overlap with and are not in conflict with the interests of the proposed Class. Her case is better documented (due to the litigation in the Southern District of New York and District of Delaware Bankruptcy Court) but is otherwise exemplary and typical. If this class is certified, Plaintiff Carrie Lynn Luft will be able to retain counsel competent in complex litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff Carrie Lynn Luft and her counsel.

148. The class may be certified pursuant to Fed. R. Civ. P. 23(b)(1). Class certification is appropriate pursuant to Rule 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications

respecting individual members of the classes would be a practical matter, be disparities of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

149. The class may be certified pursuant to Fed. R. Civ. P. 23(b)(2). Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making final injunctive relief or declaratory relief as a whole appropriate.

150. Plaintiff Carrie Lynn Luft and members of the Class have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. Plaintiff Carrie Lynn Luft currently intend to seek certification pursuant to Rule 23(b)(2).

151. The class may be certified pursuant to Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3).

152. Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## CARRIE LYNN LUFT'S GENERAL STATEMENT & REQUEST FOR RELIEF

153. Carrie Lynn Luft sues to annul, and to declare null and void, void the Florida State Court Judgment entered against her in case, Charlotte County Circuit Court Case # 06-1334-CA; Florida 2nd DCA #2D10-3807).

154. Carrie Lynn Luft alleges the fundamental due process guarantees, both procedural and substantial of the United States and Florida Constitutions were and continue to this day to be violated by an illegal and unconstitutional statewide policy of both express and implied agreement to subvert the common and statutory law of contract, property, and Anglo-American judicial norms of fair play and substantial justice.

155. Carrie Lynn Luft alleges that certain national banking associations and financial originators of consumer credit, including but not limited to the corporate Defendants herein, and all officers of the Florida mortgage foreclosure Bench & Bar of the Circuit Courts, including but not limited to the law firm defendants herein, met and agreed among each other, at a time and place uncertain but in or around Ocala Florida or elsewhere in the Middle District of Florida approximately and certainly not later than the winter of 2005-2006, so to manage all cases of Mortgage Foreclosure in Florida as

(1) to confuse, hide, and obfuscate the reality of note securitization,

(2) to allow confusion and fungible substitution and interchangeability of certain or all active brand name "lenders", "credit originators", "loan services", and other "debt collectors" so that

(3) no specific corporate party ever needed to bear the full apparent or real responsibility for the fraudulent conduct of the loan and its collection.

156. The fundamental law of the state of Florida, always revolving around F.S. Chapter 673 was always, and remains to this day, even with the passage of the dramatically unconstitutional pair of Senate Bills 1666 and House Bill 87, the so-called Unfair Florida Foreclosure Act of 2013, that a noteholder must produce the note at the inception of a foreclosure suit, and that there must be unity of interests and possession between note, mortgage, and claimant for a valid foreclosure to take place.

157. Meanwhile, the new Florida Law does effectively confess that members of the Plaintiff's class or classes have never enjoyed this protection in the past, that the Circuit courts were all but "programmed" to disbelieve and deny plaintiffs' allegations and contentions, even as the new Florida law replaces the current foreclosure procedures with an even more expedited and abbreviated foreclosure procedure, so that homeowners facing future foreclosures will have almost no opportunity whatsoever to learn the law in time to protect themselves from its abuses and abusers, including all of the Defendants herein, who in one form or another remain "open for business."

158. Without this unity of interests and ownership, any foreclosure in the state of Florida should be declared null and void, whether upheld on an appeal in agreement with the plan to subvert the common and statutory law of privity of contract and holder in due course or not.

159. Plaintiff Carrie Lynn Luft alleges that the Courts of Florida have entertained, granted and upheld not only this single void judgment against herself regarding her property in Port Charlotte, commonly known as 139 Sinclair Street, SE (33952), but have entertained, granted, and upheld thousands of void foreclosure judgments as well, thereby giving rise to a Class of similarly situated individuals who have been victims of unlawful

(legally and constitutionally void) foreclosure for lack of unified ownership of note, ownership of mortgage contract, and possession of same by (a single identifiable institutional or agent-attorney constituted or delegated) claimant in foreclosure with a valid and continuous chain of title through recorded and economically "real" (as opposed to fictitious) assignments to "real" as opposed to fictitious commercial entities with actual commercial purposes other than the collective expropriation of all private property in real estate.

160. This complaint, both as an individual and a class action arises under three general federal statutes.

161. **First, Plaintiff sues under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (hereinafter "FDCPA"),** which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and seeks primarily declaratory and injunctive relief for the individual Plaintiff Carrie Lynn Luft and the Class she represents, statutory damages, actual damages, punitive damages and attorneys fees.

162. **Second, Plaintiff seeks a declaratory judgment and injunction, on her own behalf as an individual and as representative of the class of all similarly situated persons in the State of Florida, pursuant to the Civil Rights Action, 42 U.S.C. §§1983 and 1988(a), and also under 28 U.S.C. §§1331 and 1343,** that securitization of debt voids all judgments of foreclosure entered where notes have been securitized.

163. **Under these same statutes, Plaintiff also seeks a declaratory judgment that securitization of debt voids all debt securitized, and that all Florida leniency in favor of creditors in the enforcement of such debts,** especially but not limited to mortgage

notes, is both illegal and constitutional to the extent that the common law and statutory requirements are waived and ignored.

164. **Plaintiff seeks a declaratory judgment that certain attorneys, including but not limited to the defendants herein, and other officers of the state of Florida** have in fact expressly permitted securitization or approved it as a matter of official state or federal custom, practice, and policy, with the goal or purpose of replacing individual ownership of debt with collective obligations, obliterating privity of contract and the very possibility of genuine private ownership and control of contract and private property.

165. And Plaintiff asks this Court to Find, Rule, Declare and Adjudge that in so doing the State of Florida Mortgage Foreclosure Policy infringes upon and violates the contracts clause, Article I, §10, Clause 1, the Fourth Amendment, the Fifth Amendment, the Seventh Amendment, the Ninth Amendment, and the Fourteenth Amendment to the Constitution.

166. The state legislature of Florida has passed no laws, regulations, or statutes allowing or approving the securitization of mortgage notes. Nor have the Legislature, Executive, and Courts of the State of Florida (including County Clerks & Sheriffs) approved any rules or regulations sanctioning the confusion of parties and identities inherent in securitization of mortgage notes, but have all instead jointly and severally consciously maintained the intentionally and knowingly false appearance of adherence to the common law that all mortgages are individual and personal matters, private contracts between real an ascertainable natural and/or legal persons.

167. All (or nearly all) officers of the State of Florida have instead sought to twist and pervert the enforcement of the existing common and entirely

consistent statutory law of the state of Florida to cover up the constitutional violations occasioned by securitization.

168. The process of securitization of mortgage notes obliterates private interests and the private identity of parties, replacing individual obligations of debt with collective, social ownership of debt, and ultimately, of property. Federal government backing and insurance of securitization (and the banks operating through securitization) from failure constitutes and has been designed as the instrument and vehicle by which to abolish all individual rights in private property.

169. In short, securitization through a centralized, government sponsored banking system is communism, obliterating private property through liberal, leveraged credit, exactly as proposed by Karl Marx and Frederick Engels in the Communist Manifesto originally published February 1848. The Communist Manifesto is attached as *Exhibit Q* to this Complaint, but should be required reading in every high school and every foreclosure suit.

170. Contrary to state law, although collectivization of debt has never been officially approved by statute, regulation, or presidential decree and never officially fostered and promoted by the Federal Government, securitization has been tacitly approved and so promoted as a financial vehicle for "expanding (i. e. "liberalizing") credit," especially by

    (1) the Department of Treasury,

    (2) the Comptroller of the Currency,

    (3) the Federal Deposit Insurance Corporation,

    (4) the Federal Financial Institutions Examination Council,

    (5) the Securities and Exchange Commission,

(6) the Commodities Futures Trading Commission, and certain partially government owned corporate bodies such as

(7) the Federal Reserve Board of Governors.

171. Of these seven entities, only the Department of the Treasury finds express approval in the Constitution. While Carrie Lynn Luft does not propose to question the constitutionality of these entities, she does seek to seek declaratory judgment relating to the role of each of these offices in the unconstitutional infringements on her rights (and those of the class she represents) to privately contract and hold private property in privity and in relationship with other ascertainable real natural or legal persons as individuals, whether public or private.

172. Plaintiff will show that the Defendant Attorneys and Law Firms, and certain present (Ben-Ezra & Katz) and past (David Stern) officers of the courts of the state of Florida claim and arrogate to themselves the right and power to manage property jointly and severally with the state of Florida and the central bank sponsored institutions for private profit or gain. These attorneys and law firms, operating as insiders with the banks, administer sales of foreclosed properties ostensibly on behalf of the banks.

173. But in point of fact the attorneys often (more often than not, Plaintiff alleges) keep the proceeds of the sales (as was admitted to Judge Walt Logan by MERS' attorneys in July 2005) owing to the fact that there are no standard orders of remittance or payment. In short, securitization has so destroyed the original purpose of lending that repayment of foreclosed loans now lacks commercial importance, so the lawyers are (in effect) paid massive bonuses for their complicity in the abrogation of private property rights, the expropriation of private homes, and the integrity of individual contract.

174.   Once again, the only historical precedent for this judicial process of expropriation can be found in the (then) futuristic vision of the Communist Manifesto published for the first time in London in February 1848 (Ex. Q).

175.   **Third, Plaintiff Carrie Lynn Luft, individually and on behalf of the class she represents, sues for declaratory judgment, injunction, and damages pursuant to and under the Antitrust Laws of the United States, Title 15 U.S.C. §§1-15.**

176.   Plaintiff alleges that, owing to the aforementioned and briefly above-described conspiracy to collectivize, offer and maintain securitized mortgage notes, the several National Banks and Financial Institutions operating in Florida have agreed and conspired together to fix prices, manipulate market supply and demand, stifle free and open competition in each of the distinct markets of lending, credit extension, residential, and investment real estate.

177.   Because neither Florida nor the United States has officially announced their intentions to abolish private property (or otherwise decided to adopt the first plank of the Platform of the Communist Manifesto of 1848, See **Exhibit Q**), the Parker Exception to Antitrust law violations by state actors and state actions is inapplicable.

## SECURITIZATION OF NOTES ALWAYS AND INEVITABLY DESTROYS STANDING & HENCE BOTH SUBJECT MATTER AND PERSONAL JURISDICTION UNDER FLORIDA LAW

178.   **Securitization obliterates common law and statutory (UCC) privity of contract, holder-in-due course doctrine, and foreclosure judgments to plaintiffs claiming under securitized notes constitutes fraud-in-fact and fraud on the court---always**

**warranting entry of void judgment & reversion of property to homeowner.**

179.  At its core, this case is about predatory lending practices, and what must be one the biggest fraud ever perpetrated in this history of the World – namely securitization. Specifically, this case is brought against all the above named Defendants whom were involved in the fraud by aiding and abetting in the subsequent fraudulent, deceptive and abusive evictions of Plaintiff home owners.

180.  Plaintiff Carrie Lynn Luft's loans were securitized. As is typical when a loan is securitized, the funds Plaintiff Carrie Lynn Luft borrowed did not come from any source that Plaintiff Carrie Lynn Luft could readily identify. Instead, the money came from "Investors," the identity of who was concealed by those involved in originating the loan ("Originators").

181.  Notably, some of the Investors who actually invested in extensions of credit to Plaintiff Carrie Lynn Luft and others similarly situated in Florida in the first place, have filed their own legal actions based at least in part on the very same allegations of predatory lending Plaintiff Carrie Lynn Luft were subjected to.

182.  Just a few general examples of this type of litigation are (to name first those cases most directly relevant to the present litigation relating to the Ocala Agreements and Facilities): Case 1:09-cv-09784-UA Document 1 Filed 11/25/2009; ***BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F.Supp.2d 375 (S.D.N.Y. 2011); *BNP Paribas Mortgage Corporation and BNP Paribas***, Plaintiffs, v. ***Bank of America, N.A.***, Defendant and ***Deutsche Bank, AG, Plaintiff***, 2011 WL 3847376, United States District Court, Southern District of New York, ***Bank of***

***America, N.A.***, Defendant. Nos. 10 Civ. 8630 (RWS), 10 Civ. 8299 (RWS). Aug. 30, 2011.

183.   Other randomly selected examples from around the country bearing only indirectly on the issues herein at issue include: ***Centaur Classic Convertible Arbitrage Fund Ltd., v. Countrywide Financial Corporation, Angelo R. Mozilo, et al.,*** Complaint No. BC455745, Filed February 22, 2011, Superior Court of California in and for Los Angeles County (2011 WL 6441366); ***Boilermaker National Annuity Trust Fund ("Boilermaker National") v. WAMU Mortgage Pass Through Certificates***, *WMA.*, United States District Court, Western District of Washington at Seattle, Case # C090037; ***New Orleans Employees' Retirement System et al v. Federal Deposit Insurance Corporation, et al.***, United States District Court, Western District of Washington at Seattle, Case *No: 2:09-cv-00134-MJP;* filed on August 14, 2009; ***New Orleans Employees Retirement System et al v. First American Corporation et al.,*** United States District Court, Western District of Washington at Seattle, Case *No: 2:09-cv-00137-MJP,* filed on August 14, 2009; and ***Doral Bank Puerto Rico v. Washington Mutual Asset Acceptance Corporation et al;*** United States District Court, Western District of Washington at Seattle, Case *No: 2:09-cv-01557-MJP,* filed on March 24, 2010 (collectively, "Investor Cases").

184.   Even before the loans were made, the "Securitizers" had planned and arranged with the Federal Reserve Bank and the Securities and Exchange Commission to securitize the loans. In the course of securitizing the loans, Plaintiff Carrie Lynn Luft is informed and believes that the Securitizers had a practice (in the spirit of ***The Producers** [of **Springtime for Hitler]*) of

taking more money from the Investors than was loaned to the home owners, and that they concealed this practice from both the home owners (including Plaintiff Carrie Lynn Luft and those similarly situated) and the Investors.

185. In addition, there were usually "credit enhancements" which could take several forms including such things as "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. (See, inter alia, the works of Frank Fabozzi and *http://en.wikipedia.org/wiki/Credit_enhancement* for a more detailed description).

186. Plaintiff Carrie Lynn Luft alleges that the well-known problems with American International Group (AIG), relate to credit enhancements. Both the Plaintiff Carrie Lynn Luft and the Investors have claims to the credit enhancement funds as well as undisclosed fees taken by the Originators and Securitizers and possible credits and offsets for other items.

187. As to Plaintiff Carrie Lynn Luft, such funds should be credited against her loan. Based upon information and belief, Plaintiff alleges that once a proper accounting is done and proper credits applied, Plaintiff Carrie Lynn Luft will owe nothing on her loan making the foreclosure actions simply a part of the ongoing fraud.

188. Plaintiff prays that such accountings should be provided for the class of all Florida homeowners victimized by wrongful foreclosure under the circumstances alleged herein.

## SECURITIZATION OF MORTGAGE NOTES INCLUDING THE ONE ORIGINATED TO PLAINTIFF CARRIE LYNN LUFT BUT NEVER HELD-IN-DUE COURSE BY ANY PARTY

189. Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in this present complaint. In terms of literary analogy, securitization is, in essence, Hermann Hesse's ***Glassperlenspiel*** ("Glass Bead Game") used to manage the world economy and manipulate the population and wealth of the real world of the 21st century exactly as in the fictional world of Castalia, governed from Wall Street (or 388 Greenwich Way[10] in a case involving Citibank or Citigroup Global).

190. The securities that "Securitizers" (credit originators and marketers of mortgage notes) gathered, registered and sold are described in the pseudo-academic/pseudo-social engineering works of Frank Fabozzi[11] to create and implement securitization. More concrete examples of the functioning of securitization can also be found in the complaints, briefs, and opinions available form the "Investor Cases," as listed in ¶¶182-183 above, the securities that the "Securitizers" (credit originators and marketers of

---

[10] The 388 Greenwich Building rises on Manhattan's lower west side in New York, 10013, cattycorner from Robert DeNiro's Greenwich Hotel at 377 and just around the corner from Tribeca and Pier 25 in the case of Citibank Global.

[11] Fabozzi is a real, modern day *"Magister Ludi"* (master of the game) when it comes to securitization. He is one of about a dozen intellectuals who worked together at Yale and other (allegedly) real world examples of Hesse's *Waldzell* (such as the ancient Wall Street law firm of Cadwalader, Wickersham & Taft, then located at 100 Maiden Lane) where the Glass Bead Game of Securization was first envisioned, formulated, and implemented for the purpose of transforming property ownership and the "mode of production" in the modern world into a truly post-Capitalist monetized-credit-based New World Order.

mortgage notes) gathered, registered, and then sold are so-called asset-backed securities, or ABS, created in a process known as securitization.

191. More specifically, the securities transferred involved a complex financial instrument product known generically in the securities industry as collateralized debt obligations ("CDOs"). "Synthetic" CDOs are even more complex instruments that are "derivatives" based only indirectly on the CDOs (i.e., Credit Default Swaps).

192. Securitization begins with the sale of bonds to Investors (usually they are sold "forward" meaning they are sold to the investors before the Investors' funds are given to mortgage borrowers such as the Plaintiff Carrie Lynn Luft.) Only some of the funds were then used to fund loans such as Plaintiff Carrie Lynn Luft's. Investors were led to believe all of their funds except for reasonable fees were forwarded, but this was false.

193. The entities involved in making the loans are known as the Originators. The process by which the Originators decide whether or not to make particular loans is known as the underwriting of loans. Plaintiff is informed and believes that during the loan underwriting process, representations were made to the Investors that the originators would apply various criteria to try to ensure that the loan will be repaid. However, they did not do so and instead, the way the securitization scheme was structured, it was actually in the best interests of the "Securitizers" (including Originators) for the loans to fail. They were clearly not acting with the interests of Plaintiff Carrie Lynn Luft or the Investors in mind.

194. Until the loans are securitized, the borrowers on the loans sometimes make their loan payments to an Originator, but this may never occur or only

be for a very short time. Collectively, the payments on the loans are known as the cash flow from the loans.

195. A large number of loans, usually of a similar type, are grouped into a collateral pool. The Originator of those loans claims it sells them (and, with them, the right to receive the cash flow from them) to a special purpose vehicle called a trust by the Securitizers. The trust is supposed to pay the Originator cash for the loans. As mentioned, the trust raises the cash to pay for the loans by selling bonds, in the form of certificates, to Investors. Each certificate purportedly entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

196. Hierarchically ranked "tranches" of investment bonds or equities can then be registered with the SEC and sold in the public stock exchanges. Typically, "Tranche A" is a veneer of conventional mortgages where the borrowers appear creditworthy. Other tranches had much less credit worthy borrowers. Using the creditworthy borrowers, the Securitizers more often than not "fixed" or otherwise obtained ratings on the bonds (e.g. Collateral Backed Obligations, CBOs) or equities (e.g. Mortgage Backed Equities, MBEs) that were inaccurate at best, always tilted towards maximizing price based on rosy predictions of performance.

197. This phenomenon has been alleged and found in various lawsuits and regulatory complaints regarding Standard & Poors (S&P), Moody's, and other rating agency, especially with regard to securities brokers' liability-loss-insurance & indemnity claims.

198. It has now become public knowledge that the Securitizers agreed and conspired with the rating agencies to mislead investors (as well as falsely to

induce borrowers with predatory intent). Thus, schematically, these are some of the steps in a securitization in no specific order:

(a) Investments are created for Investors usually in the form of Bonds.

(b) Credit Enhancements are obtained.

(c) Rating agencies are provided misleading information and paid to rate the Bonds as "safe" and provide misleading information.

(d) Investors pay money to the trust.

(e) The trust issues certificates to the Investors.

(f) The trust pays money to the parties up the chain toward the borrower/property owner through the Originators.

(g) Only part of the funds are used to fund mortgage loans such as the one made to plaintiff.

(h) The rest of the money is kept by the Originators and Securitizers in the scheme. In other words, by way of example, the Investors might think they are funding a loan for $1 million; however, only $500,000 is actually loaned to borrowers such as the plaintiff; and then the Securitizers keep the rest through a complex series of transactions.

(i) The Originator and Securitizers plan in advance for the loans to default. Default insurance makes this option not merely possible but sometimes attractive.

(j) Loans made to persons like Plaintiff are placed into one or more pools.

(k) The Originator was supposed to assign to the trust the loans which were placed into a collateral pool, including the right to receive the cash flow from those loans, but a proper assignment/transfer was never done. Originators such as AHL originate loans solely for securitization as state before, as did many others no longer in business,

the list simply too long to begin to include here. The marketing and sales effort to "rope" people into the securitized note market was vast, and lobbying took place in every state to relax lending laws to make sure that loans could be made as "predatory" as possible---to maximize collectivization and expropriation.

(l) The trust is supposed to collect cash flow from payments on the loans in the collateral pool; however it has no legal right to do so even under the lengthy, complex documents used in securitization. A large portion of the money in this business goes straight into the hands of lawyers. Defining, describing, and registering bond or equity issues with the SEC is the first step. Creating, decorating, and otherwise "populating" the "fake competitive entity" landscape with multiple seemingly competitive but in fact commercially non-existent business names and labels with no purpose other than illusion and distraction from the inexorable collectivization and expropriation of real estate into the great collective mass requires transactional and corporate lawyers to write up elaborate legal structures and relationships with no meaning. And finally there is the collection and foreclosure process, which directly enriches lawyers by giving them unparalleled investment opportunities while simultaneously making them hopelessly indebted and beholden to the entire fraudulent process.

(m) When the mortgage loans go into default, the Securitizers demand that payment be made to the Investors by the "credit enhancements" which include mortgage default insurance, extra collateral guarantees such as "letters of credit", credit-default swaps and "swap options", third-party government bailouts or FDIC/Fannie Mae/Freddie Mac

payments, etc. See Benjamin H. Mandel, Donald Morgan, and Chenyang Wei: "The Role of Bank Credit Enhancements in Securitization"

(http://www.newyorkfed.org/research/epr/12v18n2/1207mand.pdf) According to Federal Reserve Chairman Bernanke (2012), "Examples of important components of the shadow banking system include securitization vehicles." The "shadow banking" system of credit extension and guarantees is rapidly eating or "eclipsing" the traditional banking system of deposit capital.

(n) In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not pay off (as was planned), in order to cover the difference between what was loaned to borrowers such as Plaintiff and what was funded by the Investors and make another hidden profit for the Securitizers. It is to be remembered that speculation of precisely this kind, "short selling" of securities, was among the engines, driven by wizards of the stock exchange like Joseph P. Kennedy, which brought about the Stock Market Crash of 1929 and the Great Depression. But they had no default indemnity insurance back then.

(o) According to some published reports, these unregistered securities were frequently more than 30 times the principal on the mortgage loans (such as Plaintiff Carrie Lynn Luft's Loan.) Thus, if the borrowers such as Plaintiff Carrie Lynn Luft did not perform on the loans, the Securitizers would make more money than if they did actually pay it off. ("Springtime for Hitler & Germany" all over again).

(p) After default, even though the mortgage loan is technically paid in full if a proper accounting were done, admitting the contributions of

insurance, swaptions, etc., the Securitizers often pretend the loan is still owed by the borrowers such as Plaintiff Carrie Lynn Luft to the original named "beneficiary" on the deed of trust, and try to foreclose on the mortgage and steal the mortgaged real property from borrowers such as the Plaintiff Carrie Lynn Luft, often through fraudulent avenues including forged documents where the original loans may not be "quite perfect."

(q) Securitizers hire law firms such as Defendants who knew or should known that the collection of loans such as the Subject Loan is improper and routinely conceal information concerning such to the courts. (See, *In Re Nosek*, 406 B.R. 434.)

199. Recently, the U.S. Supreme Court has found that these law firms may be held liable in class actions under the Fair Debt Collection Practices Act. (See, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich Lpa, et al.,* 130 S.Ct. 1605; April 21, 2010).

200. At the risk of being redundant, but also more specific and adding that the taxpayers are paying for this, the order of things is usually as follows:

• The first transactions that occurred were the sale of securities to unsuspecting investors.

• The second transaction that occurred was that the investors' money was put into an account at an investment banking firm.

• The third transaction was that the investment banker divided the money between fees for itself and then distributing the funds to aggregators or a Depository Institution.

• The fourth transaction was the closing with the borrower. The loan was funded with the money from the investor after

deducting large undisclosed fees and also because of the disparity between the interest payable to the investor and the interest payable by the borrower, a yield spread was created, adding huge sums to what the investment banker took without disclosure to the investors or the borrowers.

• The fifth was the assignment and acceptance of the loan generally into between 1 and 3 asset pools, each bearing distinctive language describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.

• The sixth was the receipt of insurance or counter-party payments on behalf of the pool pursuant to the documents creating the securitization structure.

• The seventh was the resecuritization of the pooled assets between one and three times.

• The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

• The ninth are the foreclosures by parties who never provided any money but are often (like MERS) the original named beneficiary on the mortgage. This was the case in Plaintiff Carrie Lynn Luft's loan. The Mortgage Electronic Registration System gives to MERS the power of a trustee plus the power to transfer or "nominate" new beneficiaries, with no particular guidelines on how or why to do so. But MERS, again, is an entity with no business EXCEPT to provide a placeholder or

"parking garage" from which securitized note mortgages can be collected and/or foreclosed.

• In the alternative, fraudulent and forged assignments allegedly would act as sponsors for new pools of investors to disguise their failures (which practice is currently the subject of a criminal investigation around the world).

• Lastly, attorneys are hired to evict the home owners such as Plaintiff Carrie Lynn Luft, and other hundreds of thousands of homeowners in her proposed class or classes.

• After eviction (sometimes a very long time afterwards), the house is sold and no one knows at this point where the proceeds from the sales go (this was made clear many years ago in Judge Walt Logan's famous July 2005 Colloquy with the attorneys for MERS in the landmark litigation centered in St. Petersburg, in Pinellas County, where Logan sought **sua sponte** to impose and enforce the law of the State of Florida as written and received in Common Law Precedent).

• It is unlikely it goes back to the government which has at least indirectly funded all this through "bail outs".

201. Securitization involves many multifarious and complex documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master Service Agreements [if separate]. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

202. Each securitization has a Sponsor, a prime mover of the securitization. Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored securitizations, the collateral pool usually contains loans made by the Investors. Sometimes, the Sponsor may be an investment bank.

203. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage (usually a simple if hopelessly one-side, essentially unilateral contract as in Plaintiff Carrie Lynn Luft's loan in Florida---the promissor borrower undertaking to do everything but fly to the moon while the promissee agrees only to receive payments and assign the servicing rights repeatedly and for no real reason).

204. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the depositor, which then was supposed to transfer title to the loans to the trust.

205. As mentioned, the assignment of the mortgages never properly occurred and this is the subject of countless lawsuits by the borrowers such as Plaintiff Carrie Lynn Luft.

206. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The securitized trust is a mere conduit or worse, an unfunded, legally null and void chimera, that has no legal existence or power to do anything, and has no real trustee.

207. The Pooling and Service Agreements provide certain time deadlines by which transfers were to be made, and these were not met.

208. When a trust has no assets it cannot satisfy the liabilities of an issuer of securities (the certificates). According to the Investor Cases, the law therefore treats the depositor as the issuer of an asset-backed certificate.

209. According to the Investor Cases, securities dealers, represented that they would underwrite the sale of the certificates. Most important, securities underwriters provided to potential investors the information that they need to decide whether to purchase certificates.

210. Because the cash flow from the loans in the collateral pool of a securitization is purportedly the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates, if this were true, would be dependent upon the credit quality of the loans in the collateral pool.

211. According to the Investor Cases, the most important information about the credit quality of those loans is contained in the files that the Originator develops while making the loans, the so-called loan files. For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan, credit reports on the borrower, and an appraisal of the property that will secure the loan.

212. Collateral pools usually include thousands of loans. Instead of potential investors individually reviewing thousands of loan files, the securities firms that would underwrite the sale of the certificates in a securitization were supposedly responsible for gathering, verifying, and presenting to potential investors the information about the credit quality of the loans that will be deposited into the trust.

213. As was alleged in the Investor Cases, the Securitizers sold to the Investors certificates in securitizations the information that was presented to Investors contained many false statements that were material to the mortgage/loan transactions.

## SPECIFIC FACTUAL ALLEGATIONS RE: CARRIE LYNN LUFT

214. The core of this action arises out of a single credit extension made on February 23, 2006, to Plaintiff Carrie Lynn Luft ("the Subject Loan") which was both securitized and "predatory", and of which credit application Carrie Lynn Luft immediately repented and rescinded.

215. Plaintiff Carrie Lynn Luft obtained the Subject Loan from the "originator" Accredited Home Lenders (AHL). During the closing, Originators acquired the Subject Loan, evidenced by promissory notes and secured by mortgages on the homes. The terms of the Subject Loans were memorialized primarily in a promissory note.

216. Plaintiff's promissory note was never properly assigned to anyone including the original named promisee Accredited Home Lending, Inc., which was never entitled to Holder-in-Due-Course status pursuant to Florida Statutes §§673.1041, 673.3021, 673.3061.

217. (The only truly unique features of Plaintiff Carrie Lynn Luft's Accredited Home Lending/Citigroup Global Markets Realty Corp. Loan are (a) her immediate notice of dishonor and attempt to rescind the credit extension and (b) the fortuity that its improper assignment and "on books" handling became the subject of a separate lawsuit precisely concerning pooling and securitization of collateral back instruments between Citigroup Global Markets Realty Corp and Accredited Home Lending, See ***Exhibits A-C-1***, but this unique fact is merely evidentiary support for Plaintiff's allegations and theory of the case, and does not create any kind of conflict with the class or even potential for conflict with any other class members).

218. The funds for the loan ("funds for the loan" would be more properly described as an "investment in the credit extension originated") were

provided by Investors and fraud was committed in the securitization process as alleged above.

219. The banks or attorneys claiming standing to institute subsequent judicial foreclosure on the Subject (Class) Loans, each successful foreclosure terminating in (final judgment, upheld on appeal) followed by the immediate issuance of a writ of foreclosure or other eviction procedures filed to perfect interest in the subject properties by possession.

220. The mortgage inevitably identified various parties as the "lenders". Each such allegation was false and misleading because, *inter alia,* the funds came from Investors.

221. In receiving the loan documents that encumbered the Carrie Lynn Luft's subject property with her purported, disputed, AHL mortgages, Plaintiff Carrie Lynn Luft and other members of the represented class or classes relied upon promises made by the Loan Originators and upon the implied covenant of good faith and fair dealing by always maintaining honest and transparency in regards to the identity of the debt owners and the purpose of debt collection.

222. The Originators concealed from Plaintiff Carrie Lynn Luft (and all others) their intent to securitize the loan and misrepresented the identity of the party providing the funds for her loan (= "investment in support of the extension of credit approved and made in her favor").

223. In many cases, assignments of a mortgage were recorded which purportedly assigned the mortgage from the original named "lender" to third parties. These assignments were invalid, and many, if not a majority of them, were created fraudulently and/or forged (and several documents in

Carrie Lynn Luft's mortgage documentation were in fact forged, with her own signature falsified, created by a criminally felonious forgery).

224. In quite literally all cases, the amounts claimed to be in default are incorrect and/or includes charges not permitted under the loan documents.

225. Securitizers have made false statements concerning the amounts owing at various points in time to Plaintiff Carrie Lynn Luft.

226. Defendants have never shown the proper amounts claimed owing on the loans and Plaintiff Carrie Lynn Luft is informed and believes Defendants cannot do so, due to the massively complex mathematical calculations that would be required.

227. In recording Notices of Defaults ("NODs"), Securitizers unlawfully initiated Florida "summary" or "rocket docket" foreclosure proceedings against Plaintiff Carrie Lynn Luft by improperly claiming amounts not owing.

228. The NODs state, inter alia: "NOTE(S) FOR THE ORIGINAL [Mortgage] ...are presently held by the undersigned...." This was false. The foreclosing parties did not hold the notes.

229. Securitizers, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In pursuing the Florida judicial foreclosures, Securitizers represented that they had the right to payment under the note in connection with the Subject Loans, payment of which was secured by the deeds of trust. Whereas, in fact, the Securitizers were not in possession of the notes and they were neither holders of the note or assignees of the note or mortgage contract entitled to payment and therefore they were proceeding to foreclose without rights under the law.

230. The final stage of a foreclosure proceeding is a sale of the property through a (supposedly) public auction (often conducted on-line in such a manner that the sale is not "really" public in any meaningful sense) at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan.

231. This process often results in "fixed bidding" in the supposedly open Sheriff's sales in Florida, with Securitizers buying "their own" mortgage notes and foreclosing on "their own" property in a manner that absolutely positively makes no economic sense, in that these Corporate Finance Wizards are merely paying money from one of their subsidiary "pockets" into another. No kind of "bona fide purchaser for value" results from this second proposed "class action" type of transaction.

232. In fact, none of the Securitizers, or any of their authorized agents, who have played a part in the Florida "summary" or "rocket docket" judicial foreclosure proceedings were entitled to receive payment from the loan proceeds, or title to or possession of the Subject Properties.

233. In Plaintiff Carrie Lynn Luft's case, as in the MERS cases documented by Judge Walt Logan in July 2005 in Pinellas County, it was the attorneys, in Luft's case Ben-Ezra & Katz, directed the Charlotte County Sheriff to remit the money received the sale by which CGMRC paid itself to foreclose on Luft's 139 Sinclair Home. Upon good information and reasonable belief, Carrie Lynn Luft alleges that Ben-Ezra & Katz essentially were free to "bill against" this deposit of funds, in essence, to pay themselves for their services to Citigroup and its (real or more likely entirely fictitious) allies.

234.  The making of the assertion in the foreclosure proceedings (Charlotte Co. Circuit Court Case 06-1334-CA; Florida 2nd DCA 2D10-3807) that the AHL and its successors were holders-in-due-course entitled to foreclose even though no Notices of Default or of Acceleration were ever issued, and to pretend that the sheriff's/county foreclosure sale was based on anything other than amounts not properly owing were, are, and shall remain plainl and simple acts of fraud or deceit within the meaning of all relevant Florida Common Law Precedent and Statutes, including the Florida Legislative recension of the Uniform Commercial Code in Fla. Stat. Chapter 673.

235.  The intent to securitize, the fraudulent acts and omissions involved in the origination, transfers of the Subject Loans, and securitization of the Subject Loans, were concealed from Plaintiff Carrie Lynn Luft and all other similarly situated individuals (as described and alleged above).

236.  Some of the Law Firm Defendants claimed to have the right to sell the subject properties (and Ben-Ezra & Katz, P.A., May 28, 2010 letter of Danielle Spradley, **_Exhibit O_**, expressly offered to sell to Plaintiff Carrie Lynn Luft after the foreclosure judgment was entered against her home. However, they are not Bona Fide Purchasers, having had no (legitimate and valid) legal right to possession, the foreclosure having been procured by the fraud of falsely claiming holder-in-due-course status as a prerequisite for foreclosure rather than a simple legal action for breach of contract, and were asked to cooperate but instead pursued and obtained writs of possession.

237.  Securitizers and Purchasers, by and through their attorneys, the Defendant Law Firms, filed judicial foreclosure followed by police eviction actions against Plaintiff Carrie Lynn Luft (and all members of the subject

class or classes) claiming that their clients were the rightful owner of the subject properties and were entitled to possession.

238. At the time these complaints were filed, Defendant Law Firms knew or should have known of the material defects of said foreclosure sales. *In fact, they were notified and had personal knowledge of such.* However, instead of ceasing their unlawful activities, the Law Firm Defendants personally verified the complaints for foreclosure, and in some cases other documents claiming to have personal knowledge of the facts underlying the transactions and as officers of the court asserted they knew their contents to be true.

239. Defendant Law Firms always were and still are fully aware that Plaintiff Carrie Lynn Luft's loan were securitized, that this was the subject of the legal action between CGMRC and AHL in the Southern District of New York, and that their clients had no legal right to foreclose. Still, the Defendant Attorneys and Law Firms intentionally concealed these facts from the courts in the eviction actions in order to steal Plaintiff Carrie Lynn Luft' properties (See *Exhibit N:* Pooling & Servicing Agreement).

240. Prior to this action being filed, Plaintiff Carrie Lynn Luft's counsel sent letters to Defendant Law Firms, to give them actual notice of their involvement in furthering the fraud perpetrated on Plaintiff Carrie Lynn Luft and to warn them of their potential liability. Said letters requested that they cease their unlawful activities or stipulate to set-aside any judgments that had been entered in their void judgments of foreclosures.

241. All the "Class" of void judgments came down from the bench and were entered by the clerk without properly identifying the parties. As a result, these judgments stand naked, without standing, without subject

matter jurisdiction, without personal jurisdiction due to inability to trace chains of title and ownership in the securitized, collectivized system. Defendants refused to stipulate or acknowledge their wrongdoing and, instead, proceeded with the wrongful eviction actions.

242. An example of the types of improper activities engaged in by Defendant Law Firms is illustrated by the March 2010 decision in Utah, granting an injunction stopping all foreclosures by some of the Securitizers (Bank of America as successor to Countrywide Home Loans) because of the failure of one of the Securitization co-conspirators (Bank of America) to properly register in the State of Utah.

243. This Court should take judicial notice of state-by-state and even temporary national moratoriums on foreclosure which have been instituted all over the country during the past 4-6 years. Every Corporate Financial "Powerhouse" including Citigroup, has been subject to injunctive suspensions of operations on a larger or lesser scale more than once during the period starting around September 2008. Problems such as "missing loan documentation and "robo-signing" and "foreged documents" became common knowledge, but the fact that the engine behind these abuses is securitization of debt in the service of expropriation of private property is still poorly understood by the general public.

244. Plaintiff submits that she will be able to document many more examples of such abusive practices in her own loan, and the represented class of mortgage loans in Florida generally, so long as this Court will order the Defendants to comply and cooperate forthrightly during the upcoming discovery phase of this lawsuit with more persuasive force than the State Court Judges of Charlotte County, Florida, were ever willing to exercise.

## FIRST CAUSE OF ACTION:
## COMPLAINT FOR DECLARATORY JUDGMENT
## THAT LACK OF HOLDER-IN-DUE-COURSE STANDING
## YIELDS A VOID JUDGMENT, DISGUISED AS LEGITIMATE BY
## FRAUDULENT MANIPULATIONS
## OF THE JUDICIAL PROCESS

**245.** Pursuant to 28 U.S.C. §§2201-2202, and 42 U.S.C. §§1983, 1988(a), Plaintiff Carrie Lynn Luft asks this Court to review the record in this case, after final trial-by-jury of all facts and mixed questions so triable at common law, to find, hold, declare and adjudge that the AHL-Citigroup-Liquidation Properties-Citi Property Holdings' **2010 JUDGEMENT FORECLOSURE AGAINST HER WAS NULL AND VOID SINCE AHL NEVER EARNED HOLDER-in-DUE-COURSE STATUS and COULD NOT VALIDLY SUE FOR FORECLOSURE pursuant to Florida Statutes §673.3021, but succeeded in subverting the procedures in state court by fraudulent manipulation.**

246. THE COURT SHOULD ALSO FIND, DECLARE, AND ADJUDGE THE FEEDING FRENZY OF FRAUD which followed in June 2006 FIXED the MINDS of the PARTIES & COURT on the WRONG CAUSE OF ACTION, all for the sole PURPOSE of SUPPORTING SECURITIZATION & EXPROPRIATION OF PRIVATE HOMES.

247. In Florida, as in all Anglo-American jurisdictions, every complaint under the rules of civil procedure, every action at law, and every suit in equity must be prosecuted in the name of the real party in interest in her, his, or its true capacity, or by a person with express and particular authority or representative capacity by operation of law such as a administrator, bailee, executor, or trustee of an express trust.

248. In its original complaint filed June 6, 2006, Accredited Home Lenders claimed that "Plaintiff owns and holds said note and mortgage by virtue of assignment of mortgage, to be recorded." (See *Exhibit R*).

249. Obviously, by this statement, Accredited Home Lenders, Inc., was claiming to have proper privity of contract with Carrie Lynn Luft and to be the holder-in-due-course of Plaintiff's note.

250. Florida Statutes §§673.1041 & 673.3021 define a holder-in-due course or a negotiable instrument as follows:

> (1) Subject to subsection (3) and §673.1061(4), the term ***"holder in due course"*** means the holder of an instrument if:
> (a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
> (b) The holder took the instrument:
> 1. For value;
> 2. In good faith;
> 3. Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;
> 4. Without notice that the instrument contains an unauthorized signature or has been altered;
> 5. Without notice of any claim to the instrument described in §673.3061; and
> 6. Without notice that any party has a defense or claim in recoupment described in §673.3051(1).

251. AHL, in short summary, never acquired, earned, or otherwise had status as a holder in due course of Carrie Lynn Luft's note, and as a consequence, the entire Florida Foreclosure Suit was a nullity and a farce

from the beginning. Accredited MIGHT have had a proper legal action against Luft for breach of contract or a suit in equity for rescission or unjust enrichment against Carrie Lynn Luft, but AHL NEVER had a claim to foreclose on the note and property as holder-in-due-course.

252.  Of Florida's six statutory elements of "holder-in-due-course" outlined above, AHL had only a claim that "the holder took the instrument for value" on its side, because Carrie Lynn Luft had by sufficient notice negated each of the other contractual elements of "holder-in-due-course" (2) AHL acted in bad faith, knowing that Carrie Lynn Luft did not in fact agree to the terms of the loan, (3) AHL had notice that Carrie Lynn Luft had dishonored the instrument and refused to honor it, from the very first payment due under a contract to which she had never agreed[12].

253.  As Plaintiff Carrie Lynn Luft put it to the U.S. Bankruptcy Court in Delaware, "There was no meeting of the minds" (See ***Exhibit P***, Transcript of March 18, 2010 hearing in Wilmington), (4) AHL had notice the instrument had been altered and that certain collateral documents might have been forged (5) Carrie Lynn Luft had asserted her right to rescission/ cancellation and thus (6) invoked her rights to recoupment pursuant to Florida Statute §673.3061. Lack of agreement is a normal defense available to any contracting parties, and thus is expressly allowed by Florida statutory and common law.

---

[12]    **To reiterate the Plaintiff's position,** Carrie Lynn Luft first cancelled the transaction at the closing table, then gave notice of rescission, and then announced her intention not to pay and did not in fact make even one payment, though she received neither any Notice of Default or of Acceleration as a consequence.

254. Rather than recognize a simple contractual dispute for what it was and sue for breach of contract, specific performance, rescission, or even for a declaratory judgment construing the rights and obligations of the parties to a disputed transaction, AHL, because it was (as noted above) in the business of originating mortgage loans, securitizing, and selling securitized mortgage notes (AHL SEC Form 10-K, *Exhibit C-1*), went into a feeding frenzy inspired by the ultimate communist "expropriation of all private property" purposes of securitization (See *Exhibit Q*), and filed an equitable suit for foreclosure when no such suit was warranted or authorized by law. AHL knew that plaintiff Carrie Lynn Luft had substantial equity in her home and sought to expropriate this movable (liquid) property in addition to the immovable real property.

255. The suit for foreclosure is a special action in equity not available for every breach of contract or even for every dispute involving property purchased by a negotiable instrument.

256. But in 2006, the rapidly ripening 158 year old dreams of atheists Karl Marx and Frederick Engels to abolish all private ownership in land and dedicate all rents to the support of the State-Controlled & Directed Central Banks filled the minds of their distant Florida spiritual and genetic kinfolk, namely the attorneys at Ben-Ezra & Katz, and these shark-like lawyers could not wait to add Carrie Lynn Luft's home at 139 Sinclair in Port Charlotte to their own share of the feeding frenzy then (and still) gripping the United States of America.

257. The metaphor of the sharks' feeding frenzy characterizes all the strategic machinations of AHL, Citigroup, and their successors in this case,

because it was the desire to consume that certain pound of flesh which was the lodestone of Carrie Lynn Luft's life, her long time home and her shelter.

258.  Never did cool legal analysis enter into the brains of any of the attorneys involved; their assignment was to seize by foreclosure as much real estate as possible and put it at the disposal of the State-Operated Central Banking System through securitization.

259.  To keep the focus on foreclosure, and to achieve the seizure of Carrie Lynn Luft's property neatly and cleanly, AHL, Citigroup Global Markets Realty Corp, their attorneys, law firms, and successors, would stop at nothing, even when simply application and analysis of Florida Statutes §673.3021 and related provisions would have instantly revealed that foreclosure was simply the wrong suit, the wrong suit for the wrong remedy.

260.  But the zeitgeist of the early Third Millennium in America focused all parties' attention on foreclosure.

261.  The Banks and Mortgage Financial Credit Institutions, their lawyers, and law firms, had only the goal of protecting the system of securitization in mind, because this had become the chief engine of a real estate boom up until 2006 (although even then the cracks in the wall spelled out the words *"mene mene tekel upharsin"* from Chapter 5:25 of the Book of Daniel

262.  Indeed, securitization had already been weighed and found wanting, but the execution of just judgment on the modern Babylon of Wall Street remains far off.  Isaiah 59:9.

263.  But it remains to weigh the conduct of the lawyers and attorneys prosecuting the entirely improper action of foreclosure against Carrie Lynn Luft: in the defense of precious securitization, which demands foreclosure and seizure of private property for the collective pool, did they so corrupt the

judicial process in Charlotte County, Florida, as to render it a nugatory farce, a nullity of due process resulting in a void judgment?

264. All the evidence presented in this complaint suggests that they did.

265. The rapid-fire substitute assignments (October-December 2012) of American Home Mortgage Servicing for AHL for AHL, of Liquidation Properties for AHL, and then of first Citi Properties and then Lone Star Funds for Citi Property Holdings, with an intervening (or merely extraneous and invalid?) grant from Citigroup Global Marketing Realty Corp to Liquidation Properties, Inc., dated April 12, 2012, these were all a meaningless shell game to distract, to feint attacks, which disoriented not only Carrie Lynn Luft and her counsel but the five different Florida Circuit Court Judges who heard this parts of this case in Charlotte County Circuit Court.

266. Plaintiff Carrie Lynn Luft submits, on behalf of herself and the class she represents, that this feeding frenzy mentality has gripped the entire Florida Court system, exemplified by the appointment of special foreclosure judges to sit on the "rocket dockets", which do little more than rubber stamp the expropriation of tens and hundreds of thousands of homes in Florida, millions each year in the United States, to a degree incomparable and in numbers unimaginable during the Great Depression of 1929-1940.

267. Plaintiff Carrie Lynn Luft asks this Court, upon final trial-by-jury, here demanded, to render final Declaratory Judgment as Follows:

268. The Charlotte Circuit Court judgment of foreclosure against Carrie Lynn Luft (Case #06-1334) was null and void because:

269. AHL WAS NEVER A HOLDER-in-DUE-COURSE and

270.	AHL THUS COULD NEVER VALIDLY SUE FOR FORECLOSURE (nor could any of its alleged assignees take this status which AHL never had) although it might have legitimately pursued other legal or equitable remedies;

271.	THE "ZEITGEIST" FEEDING FRENZY OF FORECLOSURE FRAUD FIXED AND FOCUSED THE MINDS OF PARTIES & COURT ON THE WRONG CAUSE OF ACTION (foreclosure instead of mere breach of contract, specific performance, or unjust enrichment): AHL had a breach of contract claim and/or a suit for unjust enrichment against Carrie Lynn Luft, only this and nothing more.

272.	The purpose of the defendants' massive and systematic fraud on the court perpetrated in Carrie Lynn Luft's foreclosure case served the sole implicit (but officially concealed and hidden) core purpose of supporting securitization & expropriation of private homes at all costs of honesty and integrity of the judicial system.

273.	This purpose of the Defendants' is common to all members of the class, which Carrie Lynn Luft proposes to represent in the state of Florida.

274.	Plaintiff Carrie Lynn Luft further moves and prays that this Court will find, hold, declare, and adjudge and rule as a final matter that the mischaracterization of the cause of action, coupled with the feint attack tactics of meaningless and purposeless substitution of parties constituted extrinsic fraud on the Florida Circuit Court which justifies a finding of null and void judgment of foreclosure, a denial of due process of law by manipulation and deception of the State Courts.

275.	Plaintiff Carrie Lynn Luft further moves and prays that this Court find, hold, declare, and adjudge and rule as a final matter that all of the

Corporate Mortgage Financial Defendants acted in concert, operating at all times as closely related entities in complete privity with each other who acted in collaboration.

276. Each time, during the course of litigation, that Carrie Lynn Luft raised a material objection or brought one of the Corporate Financial Entities' actors to the attention of the Charlotte County Circuit Court, the lawyers would arrange a substitution or confusion of parties to create a distraction. Accordingly, whatever the true nature and function of theses shell entities[13] which passed Carrie Lynn Luft's case back and forth between each other like a hot potato or a time bomb, they acted with common purpose and agreement of confusing and impeding the operation of the Courts for the discovery and illumination of the true state of affairs.

277. And the true state of affairs was something that they needed to conceal, acting jointly and severally, for the common and improper purpose of supporting the securitized pools and instruments whose creation was the joint and several goal of each institutional defendant in this case (the

---

[13]     Carrie Lynn Luft vigorously contends that the several entities listed together with Citigroup Global Marketing Realty Corp and AHL as Defendants in this case are in themselves, fraudulent corporate facades like wooden pulley-operated scenes on a legitimate theatrical stage behind which the live actors hide. One might well ask in this context what "privity" between empty shell facades can possibly mean. Plaintiff herein answers, on behalf of herself and of all the members of the Plaintiff Class, that the purpose of this charade was and remains to create the appearance of real and vital commercial activity and exchange between these entities, for the purpose of maintaining the illusion that capitalism and independent corporate entities still exist and have competitive interests. But since none of these entities has any real economic activity or business function, and many lack even a home office or really operational business address (e.g. Liquidation Properties, Inc.) this is only an illusion, a shadow on the wall of a cave created by flickering torchlight seen only by prisoners who have never once walked in the sunlight. (Compare Plato's Republic, Book 7).

Plaintiffs in Florida Circuit Court through 2011), so that even the maintenance of separate identities of the Corporate Mortgage Financial Defendants itself constituted extrinsic fraud on the court justifying a finding of null and void judgment of foreclosure, a denial of due process of law by manipulation and deception of the State Circuit Courts of Florida.

278. Plaintiff further and additionally moves and prays that this Court will find, hold, declare, and adjudge and rule as a final matter that the substitution of parties in Florida Circuit Court which caused Carrie Lynn Luft's post-answer procedural default was merely a diversionary tactic of distraction to conceal AHL's (and Liquidation Properties' and City Property Holdings') election to sue for foreclosure when it was by no means a holder-in-due-course of Carrie Lynn Luft's note, and that this diversionary tactic itself constituted extrinsic fraud on the court sufficient to justify a finding of null and void judgment of foreclosure, a denial of due process of law by manipulation and deception of the State Courts.

279. In addition to, and in effectuation of, the above-and-foregoing findings and declaratory judgments requested, Plaintiff Carrie Lynn Luft prays that her home at 139 Sinclair in Port Charlotte, Florida, be returned to her with clear title, that an injunction enter against the Defendants named in this case to pursue any further collection activity against her, and that she have all her costs of suit, including attorneys' fees.

## SECOND CAUSE OF ACTION:
## COMPLAINT FOR DECLARATORY JUDGMENT
## JUDICIAL ESTOPPEL RENDERS 2010 FORECLOSURE
## WRONGFUL AND VOID AND ESTABLISHES THAT LUFT LOAN
## WAS SECURITIZED AND THAT AHL LACKED HOLDER-IN-
## DUE COURSE STATUS

**280.** Pursuant to 28 U.S.C. §§2201-2202, and 42 U.S.C. §§1983, 1988(a), Plaintiff Carrie Lynn Luft asks this Court to review the record in the collateral complaint from the United States District Court for the Southern District of New York described below (and in *Exhibit A*) and find, declare, and adjudge that

> **(1) Carrie Lynn Luft's Loan with AHL was "securitized" in the sense that it was included in a securitized pool registered with the SEC prior to the origination of Carrie Lynn Luft's Loan, and**
>
> **(2) AHL and Citigroup Global were and remain judicially estopped from denying that Carrie Lynn Luft's Loan with AHL was**
>
> **(a) subject to rescission,**
>
> **(b) fraudulently originated,**
>
> **(c) defective and uncollectable.**

**281.** Judicial Estoppel prevents a party from taking radically contradictory and mutually exclusive positions in one or more parallel different cases.

**282.** Plaintiff Carrie Lynn Luft here alleges that there was such a real world nexus and practical unity of interest between Citigroup Global Markets Realty Corp (CGMRC) and Accredited Home Lenders (AHL), (as well as Liquidation Properties, Citi Properties, and Lone Star Funds), in her Florida Foreclosure case that the "many headed hydra" against which Carrie Lynn

Luft did battle in Florida Circuit Court (Charlotte County Circuit Court Case #06-1334-CA) should be treated as one single entity for the sole purpose of evaluating judicial estoppel.

**283.** CGMRC and AHL both admitted in the Southern District of New York litigation that Carrie Lynn Luft's loan was part of a securitized investment pool, so there can be no further debate or doubt about this point that Carrie Lynn Luft's loan was securitized and that Mark H. Muller, Michael D'Onofrio, and Danielle Spradley each individually lied to and deceived the Florida Circuit Court Judges on multiple occasions throughout the Foreclosure Litigation in 06-1334-CA.

**284.** Significantly, in this regard, Mark H. Muller lied to and sought to deceive this United States District Court in at least two documents filed with the Middle District of Florida in and during May 2012 (***Exhibits D & E***).

**285.** On June 1, 2005, CGMRC agreed to purchase "a pool of mortgage loans" from AHL. See ***Exhibit A***, CGMRC First Amended Complaint (July 30, 2008): ¶¶ 1, 9, 12, 14, 19, 20, 35, 37, 39, 40, 55, 56, 68, 85, 86, 87, 89, 94, 96, 98, 102, 107, 115, 117, 121, 121.

**286.** Carrie Lynn Luft's loan closed on February 23, 2006, subject to her Dishonor and Notice of Rescission under the Truth in Lending Act (TILA).

**287.** On March 15, 2007, AHL tendered and CGMRC accepted the terms of a "Confirmation Letter" (in essence, an amended or modified purchase agreement) with Accredited Home Lenders, Inc., for the sale of a pool containing 15,000 loans (Citigroup Global Market's FAC, July 30, 2008, page 6, ¶14.

**288.** Accredited Home Lenders had filed its foreclosure suit against Carrie Lynn Luft, without sending her a Notice of Default nor of Acceleration, on

June 6, 2006, (See **Exhibit R**) but the loan was still included in the pool confirmed by AHL to CGMRC on March 15, 2007, despite it's totally non-conforming status.

**289.** CGMRC's FAC, July 30, 2008, page 9, ¶27, states:

> **Accredited admits that approximately twenty of the complained of loans were "high cost" (HOEPA) loans and further acknowledges that, as such, they were not even arguably subject to any limitation of liability, under the express terms of the parties' Agreements.**

**290.** CGMRC's FAC, July 30, 2008, page 9, ¶28 alleges in addition:

> **Accredited has breached the representations and warranties it made in the Loan purchase Agreement by selling Citigroup Subject Assets which were defective because they were sold without any effective right to proceed against collateral.**

**291.** CGMRC's FAC, (July 30, 2008) page 10, ¶34 elaborates further:

> **Accredited's breaches of its representations and warranties in the Loan Purchase Agreement are, in certain cases, the subject of actively litigated borrowers' claims concerning the Subject Assets involved. As detailed infra, these include borrower claims for loan rescission due to circumstances surrounding the origination and closing of the loans (e.g., claims for failure to provide required Truth-in-Lending disclosures, for excessive and/or illegal closing fees, and for outright fraudulent origination) – circumstances indicating breaches by Accredited of representations and warranties contained in the Loan Purchase Agreement.**

**292.** In paragraph 37 on pages 10-13, CGMRC charges that "the Luft Loan, AHL Loan #602219937 was defective because it was subject to a right of rescission, sub-paragraph (d), did not comply with "usury, truth in

lending, and all predatory and abusive lending laws" in sub-paragraph (f), "the origination, servicing, and collection practices used by Accredited [in the Luft loan were not] legal, proper, prudent or customary in the mortgage origination and servicing industry" in sub-paragraph (j), there were "error[s], omission[s], misrepresentation[s], negligence, fraud, and/or similar occurrence[s] in respect to the origination of [the Luft] Mortgage Loan in sub-paragraph (n), and finally the Luft loan failed to meet the mortgage loan pool characteristics required by the March 15, 2007, Confirmation Letter in sub-paragraph (p).

**293.** CGMRC further took the position that it was not aware that Carrie Lynn Luft "had sought to judicially enforce rescission of the Mortgage Loan prior to sale to Plaintiff" on FAC page 14, ¶38(b).

294. On page 21, ¶68, CGMRC specifically sues Accredited Home Lenders because of the "Luft" loan:

> **The borrower of the Luft Loan alleges that the loan must be rescinded on the ground that it was fraudulently originated, following a first payment default and foreclosure action commenced in June 2006. Despite kowing about the first payment default and foreclosure litigation in which the borrower alleges a right to rescission due to fraudulent origination, Accredited did not disclose these facts to Plaintiff when it sold the loan several months later in March 2007.**

295. CGMRC again acknowledged Luft's claims for fraudulent origination acknowledged on its July 30, 2008 FAC, page 49, ¶84.

296. CGMRC positively and indisputably benefited from the position it took in its First Amended Complaint against Accredited Home Lenders,

Inc., because the Luft Loan part of the detailed allegations which permitted the framing of CGMRC's First Amended Complaint in a manner sufficient to withstand challenges under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, ultimately forcing Accredited Home Lenders, Inc., into Bankruptcy and transferring all of the assets accumulated and pooled by AHL to CGMRC as collateral backing and underwriting the issuance of securities to be sold and traded on the public markets.

297. WHEREFORE AND ACCORDINGLY, Plaintiff Carrie Lynn Luft prays that this Court will declare and adjudge that, Citigroup Global Markets Realty Corp having sued Accredited Home Lenders, Inc., for delivering Carrie Lynn Luft's loan as part of a pool, when each of the elements of Florida Statutes §673.3021 (among many other laws) had been violated, that the Corporate Finance Defendants in this case are and should be forever judicially estopped from claiming holder-in-due-course standing to foreclose as to the February 23, 2006, loan originated by AHL regarding Carrie Lynn Luft's property at 139 Sinclair in Port Charlotte, Florida.

298. AND THESE PREMISES CONSIDERED, the Court should further declare and adjudge that the entire foreclosure proceeding in Charlotte County Case 06-1334-CA was a farce, a sham, and that the judgment of foreclosure resulting therefrom was and remains null and void and must be here declared invalidated for all purposes.

299. Finally, this Court should declare and adjudge that the benefits flowing to certain private corporate entities from securitization do not justify the wholesale disregard for the common and statutory law of the State of Florida, that not every contract dispute can be resolved by the seizure of private property through foreclosure, and that the Florida Circuit Courts

should be evaluated, monitored and scrutinized (in the manner of public schools during integration in the 1960s-70s or California and other state prison systems today, as allowed by 42 U.S.C. §1988(a)) to determine whether the interests of banks in securitization has so subverted due process of law that all judgments of foreclosure entered in Florida since at least 2005 should be declared void and reopened for review.

## THIRD CAUSE OF ACTION VIOLATION OF THE FDCPA, 15 U.S.C. § 1692
### (Against Defendants Law Firms, and Other Loan Servicers Acting As Debt Collectors to Be Alleged By Amendment of Supplementation under the Rules)

300. Defendants have concealed the roles of the parties and Plaintiff Carrie Lynn Luft remain unsure who the real owners/investors and "debt collectors" of the loans were, are, or may be. Such lack of information regarding ownership and assignment of debt results directly from securitization and is typical of the represented class and typical of the violations of both FDCPA, the Constitutionally enumerated Civil Rights, and Antitrust Laws herein alleged.

301. If it is possible to ascertain, Plaintiff Carrie Lynn Luft reserves the right to amend or supplement this complaint when the identity of the true "John or Jane Doe" parties who were owners and/or investors and/or debt collectors are discovered;

302. If, after diligent discovery and examination of the Defendants, it remains impossible to ascertain the true roles and (multiple?) identities of each party (which, given Defendants' astounding history of coordinated evasive and truth-veiling action, it well may), Plaintiff Carrie Lynn Luft, on

behalf of herself and the class she represents, will move and request that this court evaluate the record as it exists today, including all reasonable inferences which can be drawn from circumstantial evidence, and thus to find, declare, and adjudge in a final declaratory judgment assessing and delineating the rights and obligations of each of the parties to Carrie Lynn Luft's credit and foreclosure dispute, and to those of each of the class members herein proposed.

303. Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt...

304. In collecting on a rescinded and cancelled loan and then foreclosing on Plaintiff Carrie Lynn Luft home, and obtaining thereby the writ and order of possession, the debt collector Defendants:

a. made false, deceptive and misleading representation concerning their standing to sue the Plaintiff Carrie Lynn Luft and the interest in the debt;

b. falsely represented the status of the debt, in particular, that it was due and owing by defendants to Plaintiff Carrie Lynn Luft at the time an eviction suit was filed;

c. falsely represented or implied that the debt was owing to subsequent assignee defendants, alleging or implying that they bona fide purchaser for value, when in fact, such assignment had not been accomplished and their claim to status as bona fide purchasers of the commercial paper was and remains nugatory;

d. threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings that cannot legally be taken by them, and

e. obtained access to state courts to evict home owners, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not, and

f. in the case of Purchasers Law Firm Defendants, knew or should have known they did not acquire proper title and proceeded with eviction proceedings against Plaintiff home owners anyway; in many cases in the represented class, forcible evictions took place even while the foreclosure litigation was unresolved and ongoing, as on many occasions and in many instances mortgage foreclosure banks or their attorneys and law firms would "stake out" (i.e. stalk) target residences, find out when homeowners were on vacation or out of town, and then seize the property, falsely alleging "abandonment of property." This was all part of the Defendants' Stalinist mode of expropriation contemplated, planned, and executed here in Florida.

305. Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiff Carrie Lynn Luft or putative class members at this time as it would violate the "Pooling and Service Agreements" used in securitization.

306. Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiff Carrie Lynn Luft residences contained false statements.

307. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks

and mortgage companies and which is the subject of many administrative and regulatory department investigations as well as actual criminal investigations (both State, Federal and International).

308. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or mortgages ever occurred.

309. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692l.

310. Plaintiff Carrie Lynn Luft and Class members are entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

### FOURTH CAUSE of ACTION for VIOLATION or INFRINGEMENT of CONSTITUTIONAL RIGHTS TO INTEGRITY OF CONTRACT, EXPRESS & RESERVED (ART I., §10, Cl. 1, 5th Amendment, 9th Amendment)

#### *Availability of 1983 Civil Rights Action*

311. The attorneys and corporate financial entities named in this lawsuit are all "Debt collectors". In this cause of action these Defendants are private actors (attorneys-at-law) acting under color of law and in the guise of representing real-parties, actual legal persons, when the truth is otherwise.

312. Attorneys Acting in their Official Capacity as "Officers of the Court" utilize the judicial process to effectuate "state action under color of law" for (largely) government insured sponsored investments as a matter of official public policy, so that all debt collection foreclosure action under FALSE

color of law for government registered securities constitutes state action within the meaning of 42 U.S.C. §§1983 and 1988(a).

### *Racial Affirmative Action in Basic Property Law and Equal Access to the Courts Serves no Compelling Governmental Purposes*

313. The Basic Civil Rights Laws of the United States addressing contract and property ownership are racially biased, divisive, constitute at best illegal affirmative action programs for which no compelling governmental objectives could possibly be shown, and are thus fundamentally flawed; but these flaws can be cured by judicial declaratory action to strike the race-based schematic words from the relevant statutes.

314. 42 U.S.C. §1981 (as presently codified) establishes and articulates:

   **(a)  Statement of equal rights**

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   **(b)  "Make and enforce contracts" defined**

   For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

   **(c)  Protection against impairment**

   The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

315. Plaintiff submits that the phrase "as is enjoyed by white citizens" is archaic, offensive to American values, and should be stricken, itself declared unconstitutional, and that this Court has the power to modify this statute to render it constitutional by altering the language of section (a) to read:

> ***All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and likewise, all shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind.***

316. Likewise, 42 U.S.C. §1982 (as presently codified) establishes and articulates:

§1982. Property rights of citizens

> All citizens of the United States shall have the same right, in every State and Territory, ***as is enjoyed by white citizens*** thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

317. Plaintiff Carrie Lynn Luft submits on behalf of herself and the represented class that the highlighted race-based schematic language is archaic, offensive, and unconstitutional in light of the past 35 years of U.S. Supreme Court jurisprudence, and that the only legitimate purpose and intent of this statute is non-racial, so that the statute should read:

> ***All citizens of the United States shall have the same right, in every State and Territory, to inherit, purchase***

*lease, sell, hold, and convey real and personal property.*

318.   Plaintiff submits that this Court must now once and for all reevaluate and overrule the racially discriminatory precedents denying Plaintiff and the Class she represents her (and their) constitutional and statutory (42 U.S.C. §§1981-1982) rights to equal access to the courts, including but not limited to the same rights as institutional parties to offer and present evidence supporting state court infringements upon her rights.

319.   Plaintiff further asks that this Court find and hold as a matter of declaratory judgment that all tacit or implied executive, legislatively tolerated but not formally enacted, and judicially developed or applied customs, practices, policies, and formal or informal rules in support of enforcing securitized mortgage foreclosures have the same force and effect of causing mandatory and predetermined (illegal and constitutional) outcome dispositive "fixed" results in nearly every mortgage foreclosure case, and accordingly must be invalidated and removed.

320.   The racially oriented policy of the phrases cited in 42 U.S.C. §§1981-1982is not only unconstitutional in light of United States Supreme Court Jurisprudence (*Bakke* through *Bollinger*), but is anti-democratic in that it is effectively anti-majoritarian, and in fact completely derogatory of all civil rights issues currently viable in the United States.

321.   For this reason, the Court should find, hold, and render declaratory judgment that racial discrimination in the enforcement of civil rights removal (28 U.S.C. § 1443) and equal access to the courts has become an invitation to the State Courts to invent all manner of non-racial violations of civil rights, including massive infringements upon the fundamental rights of

access to the courts, to offer evidence, and file for judicial relief to enforce contracts and protect property (42 USC §§1981-1982).

322.   Defendants have concealed the roles of the parties and Plaintiff Carrie Lynn Luft are unsure who the other "debt collectors" of the loan are, and Plaintiff Carrie Lynn Luft will amend this complaint when the appropriate parties who were debt collectors are discovered.

323.   In the Charlotte County Circuit Court proceedings, as in circuit courts all over Florida, foreclosing parties use the formalities of litigation to frustrate and obfuscate the search for truth and ends of substantial justice. Mortgage refuse to discuss matters of substance even with pro se litigant parties "on the advice [or instructions] of counsel", but counsel for the banks refuse to discuss the role or function of servicers, agents, originators, trusts, trustees or any substantive question, and they stonewall and file endless objections to formal discovery requests, ensuring that only the wealthiest of all litigants can even go forward with a defense, much less prevail.

324.   Once again, Plaintiff quotes the words of the Prophet Isaiah:

**4   None calleth for justice, nor *any* pleadeth for truth:**
**they trust in vanity, and speak lies;**
**they conceive mischief, and bring forth iniquity.**
**\*   \*   \*   \*   \*   \*   \*   \***
**9   ¶ Therefore is judgment far from us,**
**neither doth justice overtake us:**
**we wait for light, but behold obscurity;**
**for brightness, but we walk in darkness.**
**10   We grope for the wall like the blind,**
**and we grope as if we had no eyes:**
**we stumble at noonday as in the night;**
**we are in desolate places as dead men.**
**11   We roar all like bears, and mourn sore like doves:**
**we look for judgment, but there is none;**

**for salvation, but it is far off from us.**
\* \* \* \* \* \* \*

*14*  **And judgment is turned away backward,**
**and justice standeth afar off:**
**for truth is fallen in the street, and equity cannot enter.**
*15*  **Yea, truth faileth;**
**and he that departeth from evil maketh himself a prey.**

325.   Defendants' actions constitute a violation of 42 U.S.C. §§1981-1982, if construed as a race-neutral guarantee of equal access to the Courts and of equal rights to own and acquire property, in that the Defendants have threatened to take and actually taken actions expressly prohibited by "black-letter" law in the State of Florida while falsely asserting ("under color of law") that they are doing so legally and/or in compliance with written law, when they know this to be untrue.

## *DISCRIMINATION AGAINST NATURAL PERSONS in favor of LEGAL (CORPORATE) PERSONS in Home Loan Foreclosures*

326.   Plaintiff Carrie Lynn Luft alleges on behalf of herself and all others similarly situated that the tacit and unstated but universal and official policy of the State of Florida as a matter of official custom, practice, and policy, especially as applied by most "officers of the courts" (attorneys) in Florida, discriminates against natural persons (real men and women) in favor of Legal (Corporate Persons) sponsored or insured by the government in order to confiscate private property.

327.   **Florida Circuit Court's objective behavioral *(de facto rather than de jure)* norms of judicial foreclosure (among both officers of the bench and bar) violate all Federal Constitutional Guarantees and statutory Civil Rights Laws guaranteeing Equal Access to Courts, Equal Rights to Contract, and Equal Rights to**

**Acquire and Maintain Ownership to Property against NATURAL PERSONS in favor of Artificial, Legal (Corporate) persons.**

328. The actions which Defendants have taken and threatened to take "under color of law" in their official "state actor" capacities as "officers of the court" include, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt.

329. Defendants' misconduct has caused Plaintiff Carrie Lynn Luft (and each member of the class represented) to suffer actual damages.

330. As a result of Defendants' misconduct, Plaintiff Carrie Lynn Luft and her proposed class members are entitled to actual damages and statutory damages in an amount to be determined at trial pursuant to 42 U.S.C. §§1988(b)-(c).

331. Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive and exemplary damages are warranted and hereby demanded after full-discovery and trial-by-jury, which are also hereby and herein demanded.

332. Pursuant to the controlling contractual document(s) and applicable law, Plaintiff Carrie Lynn Luft and putative class are entitled to recover costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION: MALICIOUS PROSECUTION, WRONGFUL FORECLOSURE, AND CLOSED (ON-LINE) BIDDING. Both Resulting From and Constituting Breach of the Implied Covenant of Good Faith and Fair Dealing

333.  Supplemental jurisdiction over this or these closely related Florida State Cause or Causes of Action exists and should be exercised by this U.S. District Court pursuant to 28 U.S.C. §1367 because the factual allegations and legal contentions are inextricably intertwined with those of the above-and-foregoing two counts and the following two counts, as well as all the preceding background history of Carrie Lynn Luft's mortgage foreclosure and those of the proposed class.

334.  Carrie Lynn Luft states her Third Cause of Action as one for Malicious Prosecution and Wrongful Foreclosure and for a Declaration and Adjudication of the Tort of Wrongful Foreclosure and Breach of the Implied Covenant of Good Faith and Fair Dealing (ascribed by Florida law into every contract) against the Defendant Law Firms, the individual attorneys, and Defendant Banks/Financial Service Corporations, for declaratory judgment, injunction, reversal of void judgments of foreclosure and reverter of title and possession to herself and all class members, and/or damages where return of title is impossible.

335.  Because of the predatory nature of the loans, breach of the implied covenant and outright fraud in procuring the loans, securitizing them, and violations of federal and state law relating to the making of the loan, and improper assignments, Defendants to this lawsuit had no right to foreclose on the Carrie Lynn Luft's note or to seize the real property security, nor did they have any right to file for writ of possession or evict Plaintiff Carrie Lynn

Luft and their efforts to do so constitute wrongful foreclosure and unlawful detainer of property by force and fraud.

336. Plaintiff Carrie Lynn Luft attempted to rescind her mortgage loan within the statutory timework for TILA but was not allowed to do so. She is prepared to bring forward an expert witness to testify regarding her rights under TILA and other consumer protective laws, but this witness' affidavit was not available in time for filing under the Court's foreshortened deadline for filing Plaintiff's present Second Amended Complaint.

337. Plaintiff Carrie Lynn Luft submits that her frustrated and refused (ultimately ineffective) attempt to rescind her loan resulted as the primary violation of the Originator's Breach of the Implied Covenant of Good Faith and Fair Dealing.

338. Plaintiff Carrie Lynn Luft alleges that the individual attorneys and law firms acted with actual malice towards her, in the prosecution of this case, repeatedly affirming the same to her face, especially by Mark H. Muller, but also the CGMRC attorneys in the Delaware AHL Bankruptcy proceedings as well (See Transcript of March 18, 2010 Hearing, ***Exhibit P***).

339. Plaintiff Carrie Lynn Luft is informed and believes, and thereupon alleges, that Defendant Securitizers, and each of the other Defendants named herein, were not in possession of the Notes pertaining to the Subject Residences, and are not and were not owners or otherwise entitled to collect payment or to foreclose.

340. Because NO PRINCIPALS COULD BE IDENTIFIED Defendant Law Firms clients were not properly constituted or designated as agents or other "person[s] entitled to enforce" the security interest on the subject

properties belonging to Carrie Lynn Luft and other members of the class or classes herein alleged.

341. The final stage of a foreclosure is a sale of the property at public Sheriff's auction pursuant to Florida law.

342. The foreclosing attorneys and county sheriffs have the duty to make the sale fair and equitable to the foreclosed homeowners as well as to the foreclosing financial institutions.

343. Plaintiff Carrie Lynn Luft herein alleges that many if not all of the Florida Foreclosure Sales are in fact closed rather than public and that prices and parties are fixed by agreement (see also Fourth Cause of Action for Price-Fixing and other market manipulative practices in violation of the Antitrust Laws.

344. Any bid or purchase by the foreclosing party for itself is suspect as an indicator of a fraudulent transfer[14] and unlawful, yet a large proportion of the parties put up for sale are purchased by the foreclosing party itself or by one of its shell entities set up for the purpose, noted above, of simulating actual business activity as well as economic value and market support for elevated prices where there is none, and so constitute self-dealing and extrinsic fraud on the court (and consumers) simultaneously.

345. It is unlawful to offer to accept, or actually accept, consideration in order to not bid or to fix or restrain bidding.

346. If an interested party (such as the homeowner) is defrauded as a result, that party can recover damages (i.e. the deficiency in price below mortgage value, if any) and this Court should find, rule, and enter a final declaratory judgment that all self-dealing foreclosure sales are per se fraudulent.

---

[14] **Under the terms of the Model "Uniform Fraudulent Transfer Act."**

347. At the auction third parties supposedly can freely bid to purchase the property. Plaintiff alleges that sales are fixed and prices set in advance of sale and that the supposedly "free" auctions are in fact fraudulent shams.

348. The current party entitled to obtain the money or property from the sale must give the Sheriff or supervisor of the on-line auction instructions on how much to accept at the sale, and/or whether to "credit bid" any specific amount, up to the full amount owed to the current beneficiary on the loan.

349. Securitizers, and each of the Defendants herein were not, and are not; the current beneficiaries on the trusts or pools entitled to give instructions to the trustee, nor were they or are they entitled to keep the proceeds from any sale or the property.

350. In commencing and processing a foreclosure said Securitizers committed deceit or fraud within the meaning of Florida Statutory and Common Law, as well as a breach of the implied covenant of good faith and fair dealing which is an implied element of every Florida contract.

351. The Law Firm and individual attorney defendants in particular knew or should have known of the violations of Florida Statutory and Common Law Fraud, as well as the breach of the implied covenant, thus entitling the Plaintiff Carrie Lynn Luft and each member of the class herein defined to all of their actual, consequential and special damages, as well as to punitive and exemplary damages.

*352.* The Notices of Default, Foreclosure Complaints, and Subsequent Papers subject of this lawsuit and class action all contained multiple false statements, but their falsehood is not obvious or apparent from examination of the record alone.

353. As more specifically set forth above, neither the Defendant Law Firms & Individual Attorneys nor any of the Defendant corporate finance clients, and each of them, were not in possession of the Notes in connection with the Subject Residences, are not the parties entitled to give instructions to any attorney, agent nominee or trustee of any kind, and were or are thus not entitled to collect on the debts or otherwise to enforce the security interests on the property.

354. Securitizers, including but not limited to each of the Corporate Financial institutions, law firms, or individual attorneys, herein named as Defendants, also failed to properly record and give notice of the Notice of Default, Demand, or Intent to Foreclose, as required by Florida Law.

355. Securitizers, including but each of them, did not have any legal right to foreclose upon the Subject Residences. Foreclosure is a remedy only available to "perfected" creditors, i.e. holders-in-due-course. Florida law has always required proof of perfected creditor status at the time of filing a complaint. Florida courts were for many years (including the time during which Plaintiff Carrie Lynn Luft's foreclosure proceedings took place) so lax in allowing allegations of lost or stolen notes that one can only call the court's conduct in this regard a "willful complicity in foreclosure fraud."

356. With isolated exceptions such as Judge Walt Logan in Pinellas County Florida Circuit Courts rubberstamped bank evictions without ever inquiring where thousands and thousands upon notes could all possibly have gone, or what degree of fiduciary incompetence or malfeasance could have resulted in such a situation. Where were the national scandals about so much valuable commercial paper having gone missing from so many different banks? All of this behavior shows the Florida Courts' complicity in the fraudulet

securitization process and their tacit acquiescence or acceptance of the national bank-led program to confiscate and expropriate all private property in real estate.

357.  As a direct and proximate result of Defendants' misconduct, Plaintiff Carrie Lynn Luft and putative class have suffered damages, including, without limitation, direct monetary loss, consequential damages, and emotional distress.

358.  In committing the wrongful acts alleged herein, Defendants, and each of them, acted with malice, oppression and fraud. Said Defendants' willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct alleged herein and deter such misconduct in the future.

359.  For all of the above-and-foregoing reasons, Plaintiff Carrie Lynn Luft prays for her own actual, consequential, and special damages, as well as for punitive damages for breach of the implied covenant of good faith and fair dealing, and for resultant wrongful foreclosure, and Plaintiff prays that her own foreclosure, and that of all members of her represented class, be declared null and void.

## SIXTH CAUSE OF ACTION VIOLATIONS OF
## ANTITRUST VIOLATIONS OF 15 U.S.C. §1-15

360. **Carrie Lynn Luft files her fourth cause of action against the Financial Services (Banking) Defendants, Defendant Law Firms, and individual attorneys, and other John and Jane Doe Loan Servicers Acting As Debt Collectors as evidence may reveal and show during discovery.**

361. At all times relevant to this Complaint, Defendants CITIGROUP GLOBAL MARKETS REALTY CORP, CITI PROPERTY HOLDINGS, INC., formerly known as LIQUIDATION PROPERTIES, ACCREDITED HOME LENDERS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., LONE STAR FUNDS, INC., have operated together as a continuing conspiracy among each other as members of a single cartel, to eliminate competition in the sale and financing of residential real estate in the State of Florida, the origination of credit through consumer promissory notes, and the sale, marketing, and securitization of such notes in domestic and international commerce.

362. Through CGMRC, the above-named Defendants have agreed with and among one another to fix prices, pool profits, restrict output, and engage in a concerted effort corruptly to obtain control and direction over the Bench, Bar, and Circuit Courts of the State of Florida generally (including the named Law Firms and Individual Defendants) for the purpose of preventing any deviations from their fixed prices, pooled, profits, restricted output of residential real estate homes for sale and the availability of credit, to the detriment of all individual (natural person) consumers.

363. These agreements are per se violations of § 1 of the Sherman Act (15 U.S.C.A. § 1), and were they not, nonetheless would violate that section under the Rule of Reason.

364. The agreements that CGMRC has entered into, maintained, renewed, and enforced with its parents, subsidiaries, members and affiliates have had the purpose and effect of unreasonably restraining competition in both the market for the production and sale of residential real estate in the State of Florida, and throughout the United States and the market for the origination and extension of consumer credit, the origination of such credit through consumer promissory notes, and the sale marketing and securitization of such notes in domestic and international commerce, to the detriment of all individual (natural person) consumers.

365. As a result of these agreements, Plaintiff Carrie Lynn Luft and the members of her class or classes similarly situated have been the victims of a concerted refusal to deal, have paid prices far about competitive prices if the market were allowed to function without Defendants' manipulation, have been forced to accept other supra-competitive residential real estate and financing terms, and otherwise have been damaged by being forced into rental real estate with its attendant lack of permanence, security, and community.

366. As a direct and proximate result of CGMRC's continuing violations of § 1 of the Sherman Act (15 U.S.C.A. § 1) and each of the other defendants' unlawful conduct, Carrie Lynn Luft and each of the members of the plaintiff class has suffered injury and damages in an amount exceeding $500,000 per house.

367. WHEREFORE, plaintiffs respectfully request that:

368. FIRST: This Court award each of the plaintiffs treble actual, consequential, and special damages for CGMRC's and each of its co-defendants' violations of the Sherman Act;

369. SECOND: This Court enjoin from continuing its unlawful activities or repeating any of them in the future;

370. THIRD: This Court award each of the plaintiffs their costs of suit, including attorney's fees; and

371. FOURTH This Court award such other and further relief as this Court deems proper.

372. Plaintiff Carrie Lynn Luft is further informed and believe, and thereon allege, that Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by the Federal Trade Commission Act, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

373. As a result of Defendants' misconduct, Plaintiff Carrie Lynn Luft has suffered various damages and injuries in excess of the minimum jurisdiction of this Court.

374. Plaintiff Carrie Lynn Luft seeks injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

375. Plaintiff Carrie Lynn Luft further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## SEVENTH CAUSE OF ACTION:
### Florida Deceptive & Unfair Trade Practices Act (DUTPA)

376. Supplemental jurisdiction over this closely related Florida State Cause of Action exists and should be exercised by this U.S. District Court pursuant to 28 U.S.C. §1367 because the factual allegations and legal contentions are inextricably intertwined with those of the above-and-foregoing four counts, and all preceding background material relating to Carrie Lynn Luft and the proposed class action.

377. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a civil cause of action for "[u]nconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or Commerce."

378. Carrie Lynn Luft brings this action for injunctive and declaratory relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§501.201, et seq. (hereinafter "the Act") and Chapter 86, Florida Statutes.

379. The Florida legislature has commanded that the courts liberally provisions of the act to promote the following policies:

   a. To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.

   b. To protect the consuming pubic and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Florida Statutes. §501.202(1) and (2).

380. At all times relevant hereto, Plaintiff Carrie Lynn Luft and all members of the proposed class were and are "consumers" as defined by §501.203(8).

381. Each of the Defendant lawyers and law firmss named in this lawsuit jointly and severally authored, authorized, or created the documents purportedly transferring the subject mortgage from AHL (and later CGMRC itself) to Liquidation Properties to Lone Star which Corporate Financial Defendants are responsible as principals to their attorney agents (See ***Exhibits F, G, H, I, J***).

382. All individual, law firm, and corporate Defendants in this count jointly and severally violated the FDUTPA by preparing and executing false and improper transfers, by preparing and executing one or more false and improper Affidavits of Indebtedness and submitting the same in obstruction of justice to one or more Florida Circuit Courts or District Courts of Appeal.

383. One or more documents used in Plaintiff Carrie Lynn Luft's mortgage origination and foreclosure documentation were forgeries created and manufactured by "DocumentX" programs (at the order and under the supervision of Ben-Ezra Katz) rather than by any persons with actual knowledge or authority to create the illusion that the Corporate Financial Defendants each individually or jointly together possessed equitable ownership of Carrie Lynn Luft's subject mortgage despite a complete lack of evidence to support that contention.

384. The Corporate Financial, Law Firm, and Attorney Defendants named in this lawsuit each actually knew or should have known that the Affidavit of Indebtedness, created and manufactured to give the appearance and illusion that the Corporate Financial Defendants possessed equitable ownership of

the subject promissory note and mortgage was unauthorized, invalid, and illegal. The documents forged were specifically created on behalf of AHL and Citigroup Global and Liquidation Properties, with each of these entities' acceptance and approval when in fact neither was the real party in interest at the time the claims were filed.

385. These same Defendants have violated the act by engaging in the following acts of unconscionable conduct, or unfair/deceptive practices in the conduct of trade or commerce (namely the credit financing of mortgage contracts for the purchase and maintenance of ownership of residential real estate). Defendants claimed and continue to claim that CGMRC, Liquidation Properties, and/or Citi Properties Holding, were the proper successors to AHL as the owner and holder of the subject note and mortgage.

386. Each of the Defendants and their attorneys in fact knew the claim to foreclosure status was based upon incorrect or falsified documents created and executed solely to give the illusion that first AHL from MERS, then American Home Mortgage Servicing, then Liquidation Properties, (without assignment, somehow, CGMRC, then Liquidation Properties again, abd then Loan Star and then Citigroup again (by foreclosure sale & purchase), were the owners and holders of first the subject note and mortgage and property when in fact the true owner of the beneficial interest was and is at present still unknown and/or undisclosed.

387. These Defendants' conduct alleged above, notably collection of a debt without the legal ownership of that debt, was a deceptive practice, prohibited by he mortgage contract itself, by Florida State and Federal law, inconsistent with the common law principles embodied in the United States and Florida

Constitutions, as well as in 42 U.S.C. §§1981 and 1982, and were therefore unconscionable.

388. In light of such misconduct, their position in the mortgage foreclosure case and in this very case itself amounts to a deceptive trade practice and unfair competition against any lender who might wish to operate within the law and in good faith. Despite this fatal defect, defendants filed and/or prosecuted and /or participated in the malicious foreclosure action against the plaintiff and all members of the proposed class or classes.

389. As a direct and proximate but illegal result of these Defendants' actions, Plaintiff Carrie Lynn Luft has been damaged because she has lost her homestead to these Defendant entities who are all (with regard to the laws of contract and property) utter strangers with whom she has no demonstrable legal relationship whatsoever, as defined under either the Common Law of privity of Contract or the Statutory law of Holder-in-Due Course of Negotiable Instruments.

390. Plaintiff Carrie Lynn Luft, and the members of the proposed class, have not only been dispossessed of the equitable enjoyment and benefit of their homes, but of the monetary equity she had established in her homestead and she has had her credit and reputation generally slandered by the wrongful and malicious foreclosure, wrongful and malicious eviction, and related in-and-out of court statements by Attorney Mark H. Muller and the Attorneys for Ben-Ezra and Katz among others.

391. These individuals, as noted, have acted with actual malice, both directly expressed and communicated and repeatedly implied, towards the Plaintiff, all of this behavior constituting an aggravating factor regarding the

Defendants continuous and continuing use of deceptive trade practices employed to achieve the Defendants' goals.

392. The Plaintiff and each member of the proposed class have been harmed by Defendants' deception, lack of good faith and fair dealing, and unconscionable course of conduct. Such acts, the wrongful attempts to collect the indebtedness evidenced on the note, and the filing of a baseless and malicious foreclosure lawsuit and subsequent eviction against Plaintiff Carrie Luft, and thousands, tens of thousands, hundreds of thousands more, constitute together a pattern of deceptive business practices which are unconscionable as per se violations of a large number of ordinary contract and special consumer protection statutes designed to prevent the very conduct engaged in by the defendants in this case. Each and every defendant is jointly and severally liable for all of the alleged suchlike conduct and each individual act or attempted act in furtherance of their scheme to deceive and achieve unfair business success.

393. Plaintiff Carrie Lynn Luft has incurred substantial damages as a direct and proximate result of each Defendants' illegal conduct including harm to her credit, loss of her homestead real property and associated equity, pain and suffering caused by the utter and continuing lies perpetrated upon her including Mark H. Muller's constant malicious attacks against her, the need to store her valuable personal property at great personal expense, and of course, not at all least, the attorneys' fees and other costs associated with each case.

394. Defendants goals are (1) expropriation of property, (2) defense of securitization, and (3) to render Carrie Lynn Luft homeless and destitute in

the expectation that this will render her incapable of pursuing litigation against them.

395. Plaintiff Carrie Lynn Luft moves and requests an award all her actual, consequential, direct, and special damages, and other just and appropriate relief under the law, including but not limited to attorneys' fees and costs of litigation, including expert witness expenses.

## DEMAND FOR JURY TRIAL

396. Plaintiff Carrie Lynn Luft demands a trial-by-jury of all issues so triable pursuant to the Common Law and Seventh Amendment to the Constitution of the United States of America, 28 U.S.C. §1861 et seq., and Rules 38-39 of the Federal Rules of Civil Procedure.

## PRAYER

WHEREFORE, Plaintiff Carrie Lynn Luft pray for judgment and order against Defendants, inclusive, as follows:

1. Certification of the action or common issues herein as a Class Action, appointment of Plaintiff Carrie Lynn Luft as Class Representatives and appointment counsel to be arranged as Class Counsel;

2. Such coordinated and cooperation as may be appropriate between this Court and other courts that may exercise jurisdiction over the subject matter of this litigation;

3. A determination of common issues and claims in a unitary consolidated or class wide trial under Fed. R. Civ. P. 42 and/or 23;

4. Declaratory judgment that defendants' conduct violated the FDCPA, violations of fundamental rights under the Civil Rights Act, 42 U.S.C. §§1983, 1988(a) as well as the Sherman Act , and an injunction prohibiting such acts in the future;

5. An award of compensatory damages to each injured class member in an amount deemed appropriate by the trier of facts;

6. An award of pre-judgment and post-judgment interest;

7. Awarding Plaintiff their costs and expenses in this litigation, including reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1692k;

8. An order awarding Plaintiff and the Class damages and other compensatory relief as the Court deems proper in the maximum amount allowed by law; including but not limited to actual damages, statutory damages pursuant to 15 U.S.C. § 1692k, and disgorgement, and injunctive relief under Florida's common and statutory law of unfair business practices;

9. Any other further legal and/or equitable relief to which Plaintiff and Class

members might be entitled at law or which the Court deems proper, including, according to proof, exemplary and punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct

Respectfully submitted,

Tuesday, May 14, 2013

By: _____

Carrie Lynn Luft, Plaintiff, *pro se*
P.O. Box 495953
Port Charlotte, Florida 33949

Telephone: 941-585-7027
E-mail: **carrie.luft@gmail.com**

## **VERIFICATION**

I declare under penalty of perjury that I am Carrie Lynn Luft, the Plaintiff in the above-entitled and numbered civil action **2:11-cv-703-FtM-29SPC** wherein I complain against CITIGROUP GLOBAL MARKETS REALTY CORP, *et al.*.

I have read and reviewed the above-and-foregoing Plaintiffs' Second Amended Complaint which I submit for review in compliance with the Court's Order of April 23, 2013, and the facts stated herein above-are all true and correct and within my personal knowledge.

Furthermore, I authenticate and verify the accuracy of all Exhibits submitted herein-below, and incorporate the full contents of the same by reference, together with my First Amended Complaint and Motions, Notices, and Replies submitted in support of the filing of the same, as if they were part of the body of my Second Amended Complaint.

I make this verification as a declaration under penalty of perjury as allowed by 28 U.S.C. §1746.

Done and executed on Tuesday, May 14, 2012 in Port Charlotte, Florida.

By: _Carrie Luft_

Carrie Luft, Plaintiff, *pro se*
P.O. Box 495953
Port Charlotte, Florida 33952

Telephone: 941-585-7027
E-mail: **carrie.luft@gmail.com**

## CERTIFICATE OF SERVICE

I, the undersigned, Plaintiff Carrie Luft, do hereby certify that on this Tuesday, May 14, 2013, I delivered a true and correct copy of the above-and-foregoing Plaintiffs' Second Amended Complaint in compliance with the Honorable John E. Steele's last revised deadline entered April 23, 2013:

Mark H. Muller, Esq.,

Mark H. Muller, P.A.,

5150 Tamiami Trail North, Suite 303

Naples, Florida 34103

By by e-mail to **Mark@MullerLawNaples.com**.

Tuesday, May 14, 2012

By:_____

Carrie Luft, Plaintiff, ***pro se***
P.O. Box 495953
**Port Charlotte, Florida 33949**

Telephone: 941-585-7027
E-mail: **carrie.luft@gmail.com**



# ATTACHMENT(S)

# NOT

# SCANNED

___ Exceeds scanner's page limits
___ Physical exhibit prevents scanning
X Other. Exhibits ___

**\*\*PLEASE REFER TO COURT FILE\*\***